487 A.2d 794

**ROLLINS OUTDOOR ADVERTISING and American and Foreign Insurance Company, Appellants,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD and Joseph Maas, Appellees.**

Supreme Court of Pennsylvania.

Argued Oct. 23, 1984.

Decided Feb. 6, 1985.

Reargument Denied April 29, 1985.

Roger B. Wood, Philadelphia, for appellants.

Thomas F. McDevitt, Philadelphia, for Joseph Maas.

Leroy S. Zimmerman, Atty. Gen., Henry A. Riley, Harrisburg, Amicus Curiae, for Bureau of Workers' Comp.

Before LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

We granted the petition for allowance of appeal of an employer and its insurance carrier under the Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, art. 1, § 101, et seq., as amended, 77 P.S. § 1, et seq. (hereinafter "the Act"), to determine the relative rights and liabilities of an employer and a Workmen's Compensation claimant (1) under an illegal subrogation agreement, and (2) for attorney's fees in connection with (a) successful prosecution of a third-party tort action and (b) subsequent pro-

ceedings under the Act. This matter has been considered twice by the referee, twice on appeal to the Workmen's Compensation Appeal Board and once by Commonwealth Court. 78 Pa.Cmwlth. 437, 467 A.2d 1191. Curiously, despite this seemingly inordinate amount of litigation, facts remain in dispute. Resolution of most of the issues presented hinges on ascertainment of the basic amounts of money involved and computations based upon those amounts. As will be seen *infra,* nearly every dollar amount in the case is still disputed. Indeed, the record is devoid of testimony and stipulations regarding the figures in issue. All of this leads us to question the quality of the advocacy below. Because resolution of the issues depends upon determination of the exact dollar figures, remand is inescapable. Nevertheless, for the sake of judicial economy, we will review the legal issues, using where we can the figures provided by the parties for illustrative purposes only. In addition, the evolution of the orders entered below is so complicated and fraught with misapprehensions and misapplications of the pertinent statutes that we will not even attempt to summarize here all the differences in the various orders. To do so would surely mire the reader in confusion and contempt for the appellate process. Applicable accounts of the evolution of the issues will, thus, be reserved for the discussion of those issues.

Appellee Joseph Maas was injured in a work-related accident on April 20, 1967, resulting in his total disability. Maas and his employer, Rollins Outdoor Advertising, appellant herein, entered into a compensation agreement that Maas would receive compensation in the amount of $52.50 per week. At that time, Maas was represented by Thomas F. McDevitt, Esq. Subsequently, on December 24, 1973, in an action against the third-party tortfeasors, Maas received a settlement of $67,000 for injuries sustained in the work-related accident. Maas entered into an agreement with employer's insurance carrier, Royal Globe Insurance Co.,[1]

1. Employer's insurance carrier is named American & Foreign Insurance Company in this appeal. What is the precise relation between

whereby Royal Globe agreed to accept $10,000 in full settlement of its accrued subrogation lien of $27,003.53 [2] in return for Maas' agreement to waive any future compensation payable under the Act. Both parties to this agreement were represented by counsel. Maas' counsel at this time was his attorney in the third-party action, Martin M. Krimsky, Esq. In February of 1975, appellants filed a termination petition alleging that Maas was no longer totally disabled as of January 29, 1974, and that Maas had received a substantial third-party settlement as a result of the accident causing his disability. Maas then employed his original counsel, Mr. McDevitt, who successfully defended the termination petition.

## I. ACCRUED SUBROGATION LIEN

An employer who pays compensation is subrogated to the right of the employe against a third-party tortfeasor. Section 319 of the Act provides, in pertinent part, as follows:

> Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe ... against such third party to the extent of the compensation payable under this article by the employer.... Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe ... and shall be treated as an advance payment by the employer on account of any future instalments of compensation.

77 P.S. § 671 (Supp.1984–1985). Thus, the compensation paid by the employer to the date of the third-party recovery constitutes a claim against the recovery, payable immediately upon recovery to the employer. Any recovery in excess

Royal Globe and American & Foreign Ins. Co. cannot be determined from this record.

2. Amicus, the Commonwealth, Department of Labor and Industry, Bureau of Worker's Compensation, disputes this amount, arguing instead that the amount of compensation actually paid prior to settlement of the third party action was closer to $18,570.00, representing benefits of $52.50 per week for 353 weeks. Query whether even the Bureau's figure is correct.

of the compensation paid to the date of the recovery constitutes an advance of future compensation payable. Assuming, *arguendo*, Maas had actually received $27,003.53 in compensation benefits, then appellants had a claim for subrogation for the entire amount of $27,003.53.

■ Appellants agreed to accept $10,000 in full settlement of their accrued subrogation interest in return for a promise that Maas would forego his right to any future compensation benefits. This agreement was illegal under the terms of Section 407 of the Act. That section provides in relevant part:

> [A]ny agreement made ... permitting a commutation of payments contrary to the provisions of this act, or varying the amount to be paid or the period during which compensation shall be payable as provided in this act, shall be *wholly null and void*.

77 P.S. § 731 (Supp.1984–1985). (Emphasis added.) This provision clearly announces the public policy of this Commonwealth to protect the interests of compensation claimants, and there seems to be no disagreement either among the parties to the agreement or among the lower courts that Maas' waiver of his right to future compensation payments was illegal and unenforceable.

■ All the lower courts agree that Maas is entitled to reinstatement of his compensation benefits as long as his disability continues. Appellants argue that, as the statutory provision declares the agreement terminating compensation benefits to be "wholly null and void," the entire agreement is avoided with the result that appellants are entitled to subrogation for the unreimbursed $17,003.53, this amount being the difference between the total compensation paid prior to the recovery in the third party action, $27,003.53, and the $10,000 amount they actually received from Maas.[3] We agree.[4]

3. The only asserted bar to appellants' recovery for compensation paid is the illegal agreement.

4. Maas argues this claim has not been preserved for appellate review because it was not briefed in the second appeal to the Board. We

In *Bair v. Susquehanna Collieries Co.*, 335 Pa. 266, 6 A.2d 779 (1939), this Court considered the applicability of Section 407 to an agreement where an employe accepted compensation in an amount different from the amount prescribed under the Act in return for his employer's promise to employ him as long as he was able to work. When the employer discharged the employe without cause, this Court refused to award the employe damages in assumpsit. The employe argued that the contract should be enforced on the ground the statutory prohibition was enacted for the employe's sole benefit. We expressly rejected this argument, holding, instead, that the agreement was wholly null and void and, thus, void for *all* purposes. Thus, it is of no import that the provision sought to be avoided benefits the employe.

When construing statutes, we are guided by the admonitions of the General Assembly that words and phrases be construed according to their common and approved usage, 1 Pa.C.S.A. § 1903(a), and that, when the words of a statute are clear and free from all ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit, 1 Pa.C.S.A. § 1921(b). The intent of the General Assembly, as stated in Section 407, is clear: agreements which vary the amount or time for payment of compensation benefits are "wholly null and void" and, thus, unenforceable as to all the provisions of the agreement and as to all parties. *Leaseway Systems Inc. v. Workmen's Compensation Appeal Board*, 53 Pa.Commonwealth Ct. 520, 526, 418 A.2d 796, 799 (1980). Indeed, it is difficult to

disagree. When appellants took their second appeal to the Board, notification of that appeal was sent, by the Board, to all parties in interest and their counsel. That notification contained the following provision: "Kindly advise whether you desire hearing to be: (a) On the record without argument, (b) On brief to be submitted without argument, (c) On Brief and Oral argument." Maas filed a brief; however, as no formal reply to this notification appears of record, appellants were apparently free to proceed on the record they had already made which clearly spelled out their position that, if the subrogation settlement agreement were illegal, then they should be entitled to be subrogated to the full amount of compensation paid to the date of the third-party settlement.

imagine a clearer expression of legislative intent. Had the General Assembly intended to invalidate only those provisions which compromise an employe's rights, they could have so provided. They did not. Giving the words their clear meaning, we must treat the agreement as though it never existed. Thus, the parties are returned to their positions before the agreement ever existed, and appellants are entitled to subrogation of the entire amount of benefits they paid prior to the third-party settlement.

Maas argues determination of this issue will have no actual effect on this case as appellants were given full credit for the entire amount in the form of credit against future instalments. Stated another way, Maas argues that whether appellants recover $10,000 cash at time of settlement plus $30,999.80 as credit against future instalments, or $27,003.53 cash at time of settlement plus $13,996.27 as credit against future instalments, their recovery is identical. They recover $40,999.80 in either case. This argument begs the question. Firstly, and most importantly, it ignores the basic issue of the right of an employer to avoid an illegal bargain, a right which should have been enforced in the first instance by the referee years ago. Secondly, it ignores the value to an employer of receipt of the entire subrogation amount in a lump sum at the earliest possible time. Lastly, it ignores the possibility that, had the employe's disability terminated within 6 years of the settlement, the employer would have lost his claim to the full, accrued subrogation amount.

## II. CREDIT FOR FUTURE COMPENSATION

■ Appellants are also entitled to credit for future installments of compensation payable during the period of Maas' disability, to the extent Maas' third-party settlement exceeded compensation already paid. 77 P.S. § 671, *supra.* Maas and appellants argue that the applicable figures have never been proved in the proceedings below, either by testimony or by stipulation. The record is devoid of any documents which would contradict this alleged evidentiary

insufficiency. Again, in the interest of judicial economy we will assume, without deciding, the figures used by the referee and Board below are accurate, and use those figures to illustrate the operation of the substantive legal propositions involved. Determination of the accuracy of the amounts will be the proper subject of proceedings on remand.

Maas' gross recovery from the third-party action was $67,000 less attorney's fees ($21,998.37) and other disbursements required for litigation (medical and legal costs of $4,001.83). Thus his net recovery was $40,999.80.[5] Appellants are entitled to subrogation in the entire amount. They are entitled to an immediate reimbursement for disability payments already made, and they are entitled to have the balance of the net recovery treated as an advance payment on account of any future installments of compensation during Maas' disability. Stated algebraically, where:

R = gross recovery,

c = costs of recovery including attorney's fees and any other proper disbursements made to generate the gross recovery,

n = net recovery,

p = previously paid compensation,

f = future compensation payable,

w = weekly compensation payments,

g = grace period (in weeks)

Then $R-c=n$; $n-p=f$; $R-c-p=f$ and $\frac{f}{w} = g$; therefore $\frac{(R-c-p)}{w} = g$.

Applying this formula, the Board computed the grace period to be 590.4[6] weeks. As appellants apparently ceased mak-

**5.** It appears appellants continued to pay compensation from the date of settlement of the third-party action, December 24, 1973, until January 29, 1974. Appellants have a subrogation interest in Maas' net recovery for all compensation paid or payable as long as Maas' disability continues.

**6.** The Board's computation is in accordance with the formula stated herein. However, the Board used the $10,000 figure for "p", previous-

ing disability payments in January 1974, the 590.4 week grace period would end in April, 1985. During this period, appellants should make no actual payments of disability compensation to Maas. Should Maas' disability continue beyond the grace period, appellants' liability for payments of disability compensation will resume at the end of the grace period.

## III. REIMBURSEMENT OF FEES & COSTS INCURRED IN THIRD–PARTY ACTION

Maas incurred $26,000.20 in attorney's fees and costs in prosecuting the third-party action, and he is entitled to reimbursement from appellants for some of those costs. Maas agreed to pay his attorney a one-third contingent fee which amounted to $21,998.37. In addition, Maas alleges he incurred medical and legal costs in prosecution of the action, in the amount of $4,001.83. The referee's decision, which was subsequently affirmed by the Board and Commonwealth Court, ordering appellants to reimburse Maas in an amount equal to one-third of his total recovery is plain error.

■ Section 319 of the Act provides, "The employer shall pay that proportion of the attorney's fees and other proper disbursements that the amount of compensation paid or payable at the time of recovery or settlement bears to the total recovery or settlement." 77 P.S. § 671, *supra*. Thus, Maas is entitled to reimbursement of that proportion of his $26,000.20 expense that the compensation he received to the

---

ly paid compensation, refusing to give appellants credit for the $27,003.53 amount they allege they actually paid. Thus the Board's computation ($67,000 – $26,000 – $10,000 = $31,000), in round numbers, left appellants with $31,000 to be treated as advance payment on future compensation payable. $31,000 ÷ $52.50/week = 590.4 weeks.

Had the Board given appellants credit for the entire amount of compensation they paid to date of settlement, $27,003.53, the computation, in round numbers, would have been:

$$\frac{\$67,000 - \$26,000 - \$27,000}{\$52.50/\text{per week.}} = 266.6 \text{ weeks.}$$

Thus, the grace period would have been 266.6 weeks.

date of settlement, $27,003.53, bears to the total recovery, $67,000. Where:

R = gross recovery,

p = previously paid compensation,

c = costs of recovery including attorney's fees and any other proper disbursements made to generate the gross recovery,

e = employe's share,

then, $\frac{p}{R} \times c = e$. $27,003.53 divided by $67,000 is 40%.[7]

Therefore, Maas is entitled to reimbursement of 40% of $26,000.20, or $10,400. Contrary to one of the arguments asserted, Maas' right to reimbursement of appellants' share of attorney's fees and costs is absolute. No variation in the length of the grace period, as, for example, in a case of cessation of disability, should alter Maas' right to reimbursement of the entire amount.

The referee ordered appellants to reimburse Maas for their share of the attorney's fees and costs plus interest over the grace period of 590.4 weeks. This means that appellants will repay Maas $17.62 per week, plus interest.

## IV. ATTORNEY'S FEES FOR TERMINATION PROCEEDING [8]

Appellants also dispute the award of attorney's fees to Mr. McDevitt, who successfully defended Maas on the ter-

---

[7]. The reader is admonished at this time that some slight variation in dollar amounts is possible, depending upon how the decimals are rounded off.

[8]. The applicable statutory provisions regarding awards of attorneys fees are found at 77 P.S. §§ 996, 998 (Supp.1984–1985). These provide:

§ 996. Contested cases regarding liability; attorney's fees and other costs; limitation and calculation.

In any contested case where the insurer has contested liability in whole or in part, the employe or his dependent, as the case may be, in whose favor the matter at issue has been finally determined shall be awarded, in addition to the award for compensation, a reasonable sum for costs incurred for attorney's fee, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the

mination petition. As stated *supra,* appellants filed a petition to terminate Maas' compensation benefits, whereupon Maas reemployed Mr. McDevitt, his original counsel, to defend the petition. The proceedings on the petition to terminate are separate and distinct from the third-party tort action. Thus, questions involving the award of attorney's fees for defense of the termination petition are separate, distinct, and wholly unrelated to the questions involving the award of attorney's fees in the third-party tort action.

The termination petition alleged that Maas' disability ceased on January 29, 1974, and that Maas had recovered a substantial amount in a third-party action. Doubtless, the alleged cessation of disability was based on Maas' waiver of any claims to future compensation and appellants' belief that their liability for future compensation payments had ceased; however, this theory was not precisely asserted in

proceedings: Provided, That cost for attorney fees may be excluded when a reasonable basis for the contest has been established: And provided further That if the insurer has paid or tendered payment of compensation and the controversy relates to the amount of compensation due, costs for attorney's fee shall be based only on the difference between the final award of compensation and the compensation paid or tendered by the insurer.

In contested cases involving petitions to terminate, reinstate, increase, reduce or otherwise modify compensation awards, agreements or other payment arrangements or to set aside final receipts, where the contested issue, in whole or part, is resolved in favor of the claimant, the claimant shall be entitled to an award of reasonable costs as hereinabove set forth.

§ 998. Attorney's fees; services performed before referee or board; approval; amount.

All counsel fees, agreed upon by claimant and his attorneys, for services performed in matters before any referee or the board, whether or not allowed as part of a judgment, shall be approved by the referee or board as the case may be, providing the counsel fees do not exceed twenty per centum of the amount awarded. The official conducting any hearing, upon cause shown, may allow a reasonable attorney fee exceeding twenty per centum of the amount awarded at the discretion of the hearing official.

In cases where the efforts of claimants' counsel to produce a result favorable to the claimant but where no immediate award of compensation is made such as in cases of termination or suspension the hearing official shall allow or award reasonable counsel fees, as agreed upon by claimant and his attorneys, without regard to any per centum.

the petition. The referee, quite reasonably, treated the argument that all disability had ceased as an assertion that no medical disability existed. As appellants failed to present any medical evidence that disability had ceased, the referee found that disability continued and denied the petition. He ordered appellants to restore Maas' compensation benefits in the amount of $52.50 per week, subject to subrogation credit against the excess third-party recovery. The referee further awarded Mr. McDevitt attorney's fees in the amount of 20% of the recovery. Appellants have challenged the amount of this award on the ground of alleged ambiguity. On appeal, the Board held that Mr. McDevitt's fee was 20% of $52.50, the amount of compensation awarded, or $10.50 per week. Commonwealth Court reformed the award by holding Mr. McDevitt's fee should be 20% of Mr. Krimsky's fee, or $3.52 per week. This was plain error.

■ The result of Mr. McDevitt's successful defense of the petition for termination of compensation was a reaffirmation of Maas' entitlement to compensation in the amount of $52.50 per week. Thus, the recovery was $52.50 per week. As the attorney's fee was set at 20% of the amount of recovery, that fee must necessarily be 20% of $52.50, or $10.50 per week.

Both the referee and the Board ordered that Mr. McDevitt's fee be paid by appellants, directly to Mr. McDevitt, "out of Claimant's share [of compensation]". Confusion over this award arose due, no doubt, in part to the fact that claimant Maas was not actually receiving any payments at that time, as the parties were then in the grace period. In other words, while Maas' entitlement to disability compensation had not ceased, the actual payment of compensation was temporarily suspended. Thus, appellants were not actually making any payments and when the referee ordered the attorney's fee be charged to Maas but paid by appellants, a patent ambiguity existed as to which party actually bore the expense. As the award of attorney's fees is in the discretion of the referee, on remand the referee

will have to clarify who is charged with the liability for payment of Mr. McDevitt's fee. If the fee is the legal responsibility of appellants, then they should be required to pay $10.50 per week for every week that Maas' disability continues. If, however, Maas is required to pay Mr. McDevitt's fee, then the $10.50 per week can be paid out of the $17.62 Maas is entitled to recoup during the grace period for his attorney's fee in the third-party action. This would leave $10.50 for Mr. McDevitt, and $7.12 for Maas. After the grace period, Maas would receive $42.00 per week, and attorney McDevitt would receive $10.50 per week.

The parties on this appeal agree that Maas recovered $67,000 in the third-party settlement and that appellants recouped $10,000 for compensation actually paid prior to the settlement. All other facts are yet in dispute. The order of the Commonwealth Court is reversed and the case is remanded to the referee for findings of fact and computations based on those findings in accordance with this opinion.

Reversed and Remanded.

LARSEN, J., files a concurring and dissenting opinion in which PAPADAKOS, J., joins.

NIX, C.J., did not participate in the consideration or decision of this case.

LARSEN, Justice, concurring and dissenting.

I would hold the appellee is correct in his argument that the questions of: (1) whether the appellants are entitled to subrogation for the sum waived by the illegal agreement between appellants and Maas and (2) the proper computation of that amount, were not preserved for our review.

In his decision of July 29, 1977, the referee found, *inter alia*, "That [Maas was] entitled to restoration of his workmen's compensation benefits subject to subrogation credits by [appellants] for prior payments." The appellants appealed the ordered restoration of compensation rights to the Workmen's Compensation Appeal Board. On May 1, 1978,

the Board remanded the case to the referee for "clarification of the precise dimensions of the compensation rights and the subrogation interest." On January 9, 1981, the referee circulated a decision on the remanded petition wherein he found, *inter alia,* that: "The [appellants], having accepted $10,000 on account of [their] subrogation for compensation paid to January 29, 1974 [are] entitled only to credits on account of future payments of compensation after [January 29, 1974]." The appellants appealed from that January 9, 1981 decision challenging the referee's conclusions concerning counsel fees and interest on those fees.

In their appeals to the Workmen's Compensation Appeal Board and then to Commonwealth Court, the appellants failed to raise the subrogation questions now presented to this court and decided in parts I and II of the majority opinion. Neither the Appeal Board[1] nor the Commonwealth Court[2] had these issues before them.

> "It is a fundamental doctrine in this jurisdiction that where an issue is cognizable in a given proceeding and is not raised it is waived and will not be considered on a review of that proceeding." (citations omitted).

*Commonwealth v. Romberger,* 474 Pa. 190, 378 A.2d 283 (1977). This even applies where the issue is of constitutional dimensions. *Id.* 474 Pa. at 197, 378 A.2d at 286. The appellants have waived any issue of subrogation for compensation paid up to January 29, 1974, and the proper

1. The Workmen's Compensation Appeal Board, in its opinion, stated:
   "This Board in May of 1978 remanded [this] case to the referee for an exact determination as to the [appellants'] subrogation rights. Referee Stander circulated a new decision on January 9, 1981. The [appellants have] taken an appeal from that decision limited to two issues as far as we can tell. The credit to be given the [appellants] as it relates to attorney fees (both incurred as a result of the third party settlement and in defending the instant petition), and whether interest is due because the [appellants allege] attorneys fees the [appellee] pays are not 'compensation.'"

2. The Commonwealth Court said the issue before it was as follows:
   "This case presents us with a question of first impression: Did the board legally err when it formulated, the compensation attorney's fees?"

computation of such sum. I dissent to parts I and II of the majority opinion.

I concur in parts III and IV of majority's opinion with the understanding that the figures used are for illustrative purpose only.

PAPADAKOS, J., joins in this concurring and dissenting opinion.