534 A.2d 853

Robert Bayush, Petitioner *v.* Workmen's Compensation Appeal Board (Conemaugh Township), Respondents.

Submitted on briefs May 21, 1987, to Judges DOYLE and PALLADINO, and Senior Judge BLATT, sitting as a panel of three.

*Michael F. Campanella*, with him, *Thomas Hollander, Evans, Ivory, Moses, Hollander & MacVay*, for petitioner.

*Edward G. Kuyat, Jr.*, with him, *Craig E. Kuyat, Kuyat & Kuyat*, for respondent, Conemaugh Township.

OPINION BY JUDGE DOYLE, December 14, 1987:

Robert Bayush (Claimant) petitions for review of an order of the Workmen's Compensation Appeal Board (Board) that affirmed a referee's decision granting Conemaugh Township (Employer) and its workmen's compensation insurer, the Pennsylvania Manufacturers' Association (PMA), a credit for workmen's compensation benefits paid or payable to Claimant after November

17, 1981, resulting from the settlement of a third-party negligence claim. We affirm.

On April 28, 1977, Claimant was riding on the rear of Employer's garbage truck in the course of his employment. When Employer's truck came to a halt, Claimant's left arm became entangled in the blade portion of the truck's garbage compactor and his arm was crushed. Employer then issued a notice of compensation payable and Claimant began receiving workmen's compensation benefits.

Subsequently, Claimant instituted a products liability action against Thiele, Inc. (Thiele), the manufacturer of the body portion of the garbage truck, in the Court of Common Pleas of Allegheny County. During 1981, the parties in the Thiele case and PMA began settlement discussions. After a series of conversations among Claimant's counsel, PMA and the trial judge, the Honorable FRANCIS A. BARRY,[1] an arrangement was worked out whereby Thiele agreed to settle the case for $75,000, payable in a series of payments, because the defendant, Thiele, was uninsured. PMA agreed to accept $3,625 in compromise of its subrogation rights (likewise to be paid in installments) and to release a lien of approximately $24,000 it held against the Thiele settlement for compensation *already* paid to Claimant. Employer and PMA held this lien pursuant to Section 319 of The Pennsylvania Workmen's Compensation Act (Act).[2] Claimant settled his case against Thiele on November 17, 1981.

After the settlement, Claimant's counsel withheld Employer's and PMA's *pro rata* share ($2,880) of the initial Thiele settlement payment on the ground that their right to subrogation was limited by the Pennsylvania

---

[1] Judge BARRY is presently a judge of this Court.
[2] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §671.

No-Fault Motor Vehicle Act (No-Fault Act),[3] and from the date of settlement until July 1982, Employer continued to pay workmen's compensation benefits to Claimant.

In July 1982, Employer filed a termination petition, which was later amended to be a petition for modification, asserting a right to credit for the proceeds of the Thiele settlement to be set off against any compensation paid or payable to Claimant after November 17, 1981.

After the first hearing on Employer's petition to modify, Claimant abandoned his position that the No-Fault Act precluded Employer's subrogation rights. Claimant then mailed to PMA a letter, a settlement agreement, and a check for $2,880. The letter stated that the check was being offered in return for Employer's withdrawal of its termination/modification petition *and* a release by Employer of any credit it would have against any future compensation payable to Claimant. Claimant's proposed settlement agreement was to the same effect. PMA cashed the check, but refused to sign the settlement agreement. Instead, PMA sent to Claimant's counsel its own proposed settlement agreement, which would have allowed Employer a credit for the settlement funds against any future compensation payable to Claimant. Claimant refused to sign the Employer's proposed settlement agreement. A subsequent check sent by Claimant to PMA was returned to Claimant uncashed.

Employer also did not withdraw its termination/modification petition. Claimant was then allowed to amend his answer to the petition so as to ask for enforcement of an alleged settlement between Claimant and PMA. After a series of hearings, a referee granted

---

[3] Act of July 19, 1974, P.L. 489, *repealed by* the Act of February 12, 1984, P.L. 26.

Employer a credit against any compensation paid or payable to Claimant after November 17, 1981. The Board affirmed and this appeal followed.

Before we begin the analysis of the legal issues in this case, we note that the ground upon which the Board decided this case was erroneous.[4] This Court may, however, affirm a decision of the Board where the result is correct, even though the reasons advanced in support of the decision are erroneous, where the correct basis for the decision is clear on the record. *Haney v. Workmen's Compensation Appeal Board*, 65 Pa. Commonwealth Ct. 461, 442 A.2d 1223 (1982). In this case, the referee correctly framed the issues and made the necessary findings of fact, which are supported by substantial evidence. Since the referee is the ultimate finder of fact in a workmen's compensation case, *Universal Cyclops Steel Corp. v. Krawczynski*, 9 Pa. Commonwealth Ct. 176, 305 A.2d 757 (1973), and the Board took no additional evidence in this case, we will utilize the referee's findings in reaching our decision. *Evans v. Workmen's Compensation Appeal Board (Anchor Hocking Corp.)*, 87 Pa. Commonwealth Ct. 436, 487 A.2d 477 (1985).

---

[4] The Board's opinion in this case suggests that our Supreme Court's decision in *Rollins Outdoor Advertising v. Workmen's Compensation Appeal Board*, 506 Pa. 592, 487 A.2d 794 (1985) held that an employer may never release or waive its rights to credit against compensation payable to a claimant after the date of a third-party settlement. We find this to be an incorrect statement of the law. Although we acknowledge that the void settlement entered into by the claimant in *Rollins Outdoor Advertising*, and the settlement allegedly entered into by Claimant and Employer here would have the same practical effect, we find *Rollins Outdoor Advertising* distinguishable.

In *Rollins Outdoor Advertising*, the claimant sustained injuries due to the negligence of a third-party tortfeasor while in the course of employment in the year 1967. From 1967 until the settlement of an action by the claimant against the third-party tortfeasor in 1973,

Under the Act, an employer who pays compensation is subrogated to the right of an employee against a third-party tortfeasor. Section 319 provides:

Where the compensable injury is caused in whole or in part by the act or omission of a third

---

the employer's workmen's compensation insurance carrier paid workmen's compensation benefits to claimant totalling $27,003.53 (there is some dispute as to the monetary figures actually involved in *Rollins Outdoor Advertising* and the Supreme Court took special note that the monetary figures used by it in the case were used for purposes of illustration only). In conjunction with the third-party settlement of $67,000, employer's workmen's compensation insurance carrier agreed to accept $10,000 in full settlement of its accrued subrogation lien. In return for the insurance carrier's release of its lien, the claimant agreed to waive any workmen's compensation payable to the claimant after the date of the third-party settlement.

The Court held that the settlement entered into between the claimant and the employer's workmen's compensation insurance carrier violated Section 407 of the Act, 77 P.S. §731. Therefore, because the agreement between the claimant and the employer's workmen's compensation insurance carrier was absolutely null and void, the employer was entitled to its full subrogation rights under Section 319 and a credit against any compensation payable to the claimant after the date of settlement of the claimant's third-party action. *Rollins Outdoor Advertising*, 506 Pa. at 596-601, 487 A.2d at 796-98.

*Rollins Outdoor Advertising* does not stand for the proposition, however, that an employer's right to credit against future compensation may never be released, waived or relinquished by an employer. In *Rollins Outdoor Advertising*, the agreement was void under the provisions of the Act. This brought into effect by operation of law the provisions of Section 319. By contrast, in the present case, neither of the parties contend, nor do we find, that a release or waiver by an insurance carrier of its right to a credit against compensation payable to a claimant after the date of settlement of an action against a third-party tortfeasor would violate the provisions of the Act or the public policy or laws of this Commonwealth. The real question in this case is whether Employer ever agreed to release or waive its right to credit. If it is shown that Employer did indeed agree to release its rights, then Section 319 would be inapplicable.

party, the employer shall be subrogated to the right of the employe . . . against such third party to the extent of the compensation payble [sic] under this article by the employer. . . . *Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe, his personal represenative [sic], his estate or his dependents, and shall be treated as an advance payment by the employer on account of any future installments of compensation.*

77 P.S. §671 (emphasis added). Thus, under Section 319 the compensation paid by the employer to the date of the third-party recovery constitutes a claim against the fund resulting from the recovery, payable immediately to the employer upon recovery. *Rollins Outdoor Advertising v. Workmen's Compensation Appeal Board*, 506 Pa. 592, 487 A.2d 794 (1985). Any recovery in excess of the compensation paid to the date of recovery constitutes an advance of future compensation payable. *Id.*

All the issues in this case revolve around the question of whether Employer waived or relinquished its rights to a credit against any compensation paid or payable after November 17, 1981 to Claimant.[5] Claimant's first contention is that the Board's decision was not supported by substantial evidence. More particularly, Claimant contends that the referee's finding that PMA did not agree to settle or compromise Employer's right to credit against compensation paid or payable to Claimant after November 17, 1981 is unsupported by the evidence. This contention is without merit.

---

[5] Our scope of review over decisions of the Workmen's Compensation Appeal Board is limited to determining whether constitutional rights or the provisions of 2 Pa. C. S. §§501-508 have been violated, an error of law has been committed, or the Board's essential findings of fact are unsupported by substantial evidence. *Road-*

PMA's district manager testified that in his conversations with Judge BARRY and Claimant's counsel regarding the settlement of Claimant's action against Thiele, the issue of Employer releasing any claim it had for credit against future compensation payable to Claimant under Section 319 was never discussed [R.R. 57A], and that Employer's and PMA's understanding was that Employer was entitled to credit against any compensation payable after the date of settlement under Section 319 [R.R. 58A]. There is also correspondence in the record to support PMA's position [R.R. 148A]. Since these findings are supported by substantial evidence, they cannot be disturbed on appeal. *Bailey v. Workmen's Compensation Appeal Board (Lawton Feed & Supply, Inc.)*, 105 Pa. Commonwealth Ct. 106, 523 A.2d 415 (1987).

Claimant's second contention is that Employer and PMA should be equitably estopped from asserting their right to the credit. We disagree. It has been held that an employer may be equitably estopped from asserting its subrogation rights under Section 319. *Meehan v. Philadelphia*, 184 Pa. Superior Ct. 659, 136 A.2d 178 (1957); *see also Travelers Insurance Co. v. Hartford Accident and Indemnity Co.*, 222 Pa. Superior Ct. 546, 294 A.2d 913 (1972). Equitable estoppel arises when someone by his acts, representations or admissions, or by his silence when he ought to speak out, either intentionally or through culpable negligence induces another to believe certain facts to exist and such other person rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts. *Bearoff v. Bearoff Brothers, Inc.*, 458 Pa. 494, 327 A.2d 72 (1974). In short, the two essential elements of equitable estoppel are an induce-

*way Express, Inc. v. Workmen's Compensation Appeal Board (Ostir)*, 104 Pa. Commonwealth Ct. 7, 520 A.2d 1261 (1987).

ment, and a justifiable reliance on the inducement. *Novelty Knitting Mills, Inc. v. Siskind*, 500 Pa. 432, 457 A.2d 502 (1983). The party asserting the estoppel bears the burden of proving it by clear and convincing evidence. *Blofsen v. Cutaiar*, 460 Pa. 411, 333 A.2d 841 (1975).

In the present case, Claimant has failed to show any inducement by Employer or PMA that would have led Claimant to believe Employer had released its right to credit against compensation payable after the date of the Thiele settlement. The referee found that Employer and PMA had never discussed, let alone agreed to, the release of their right to credit against compensation payable after the date of the third-party settlement. Therefore, an estoppel in this case cannot be based on any representation or admission by Employer or PMA.

Claimant further argues that Employer's continued payment of compensation for approximately nine months after the settlement led him to believe that Employer had released its claim to credit against compensation payable after the date of settlement. This action on the part of PMA is not, however, inconsistent with its position. Claimant's counsel initially claimed before the referee that Employer's and PMA's subrogation rights under Section 319 were limited by the No-Fault Act. Employer's action in continuing compensation payments was consistent with Claimant's No-Fault Act position, because if Claimant's No-Fault Act contention had been correct, then Employer's duty to pay compensation would have continued. Therefore, the doctrine of equitable estoppel is inapplicable in this case.

Last, Claimant contends that when PMA cashed Claimant's check, it entered into a binding accord and satisfaction. Our Supreme Court has stated that "[t]he same elements are necessary to show the existence of an 'accord and satisfaction' as to show the existence of any contract." *Brunswick Corp. v. Levin*, 442 Pa. 488, 491,

276 A.2d 532, 534 (1971). A "meeting of the minds" must be shown. *Suits To Use v. Aetna Casualty & Surety Co.,* 106 Pa. Superior Ct. 231, 161 A. 592 (1932). There also must be consideration for the agreement, which in the case of an accord and satisfaction means that a bona fide dispute exists between the parties. *Hayden v. Coddington,* 169 Pa. Superior Ct. 174, 82 A.2d 285 (1951). The requirement of a bona fide dispute was explained as follows by our Supreme Court:

> Where there is a dispute or disagreement between the debtor and creditor as to their respective rights, a payment tendered in full satisfaction of the other claim operates as an accord and satisfaction if the payment is accepted and retained. On the other hand, in the absence of such a controversy, the payment of a part of the amount due under a contract, even though accepted by the creditor as in full satisfaction of the debt, does not work a discharge of the entire indebtedness, for the reason that there is no consideration for the creditor's agreement that it should so operate.

*Lucacher v. Kerson,* 355 Pa. 79, 80-81, 48 A.2d 857, 858 (1946) (footnotes omitted). The burden of proving an accord and satisfaction, including the existence of a bona fide dispute, rests upon the party alleging it. *Duryea v. Long,* 191 Pa. Superior Ct. 511, 159 A.2d 259 (1960).

Claimant here has shown neither a bona fide dispute nor a meeting of the minds. Employer's claim to credit against future compensation payable to Claimant in this case became fixed upon the date of settlement of the Thiele action. The evidence in this case shows that prior to Claimant's tendering of the check, there was no dispute following Claimant's abandonment of his No-Fault position as to whether Employer held its lien against future compensation payable to Claimant under Section

319, since the issue was never discussed. Therefore, Claimant's tender was but "a mere refusal to pay a claim undisputed in fact." *Hagerty Oil Co. v. Chester County Security Fund, Inc.*, 248 Pa. Superior Ct. 456, 458, 375 A.2d 186, 187 (1977). Moreover, PMA's return of the settlement agreement prepared by Claimant's counsel, along with its own proposed settlement agreement, which differed by its terms from Claimant's as to whether Employer had a credit against future compensation payable to Claimant, shows that Employer and PMA and Claimant never reached a meeting of the minds.

Affirmed.

ORDER

Now, December 14, 1987, the order of the Workmen's Compensation Appeal Board, No. A-87567 dated April 11, 1986, is hereby affirmed.

Judge BARRY did not participate in the decision in this case.