**Joseph EMANUEL, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (COCO BROTHERS, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 10, 1997.

Decided April 23, 1997.

---

Amiel B. Caramanna, Jr., Pittsburgh, for petitioner.

Thomas V. Gebler, Jr., Pittsburgh, for respondent.

Before DOYLE and McGINLEY, JJ., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

Joseph Emanuel (Claimant) petitions for review of an order of the Workmen's Compensation Appeal Board (Board) which affirmed a decision by a workers' compensation judge (WCJ) granting the modification petition filed by Coco Brothers, Inc. (Employer). The issue before the Court is whether the WCJ erred in applying the net method, rather than the gross method, to determine Employer's subrogation rights and liabilities with respect to a third-party settlement.[1]

### Facts

On December 24, 1985, Claimant sustained a work-related injury when the scaffold on which he was working collapsed and he fell approximately fifty-six feet to the ground. Employer issued a notice of compensation payable which provided compensation for total disability at the weekly rate of $276.63. On October 12, 1990, Employer filed a petition for termination or suspension of benefits and, after Claimant filed a timely response, the case was assigned to a WCJ.

On February 23, 1993, Employer filed a modification petition, alleging that, on January 20, 1993, Claimant had amicably settled a third-party action which resulted in the payment of $725,000.00 to Claimant; Employer sought reimbursement of its subrogation lien and a credit against future benefits to which Claimant may be entitled. Claimant filed an answer in which he acknowledged Employer's right to subrogation, but averred that calculations should be made employing the gross method, as opposed to the net method suggested by Employer.

The WCJ denied Employer's petition for termination or suspension based on findings that Claimant remained totally disabled. The WCJ granted Employer's modification petition and, reasoning that Employer was entitled to choose the method of calculation to be used, applied the net method to calculate Employer's entitlement.

Claimant appealed to the Board, arguing that the WCJ committed an error of law by not utilizing the gross method of calculation. Claimant argued that there is no provision in the Act and no case law that permits employers to choose the method of calculation.

The Board observed that there is no authority, statutory or otherwise, which addresses the specific issue raised. The Board concluded that the WCJ did not commit reversible error and affirmed the WCJ's decision.

On appeal,[2] Claimant contends that this Court has consistently approved the gross

---

1. Subrogation relating to recoveries from third parties is provided for in Section 319 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 671.

2. Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. *Stonebraker v. Workmen's Compensation Appeal Board (Seven Springs Farm, Inc.),* 163 Pa.Cmwlth.468, 641 A.2d 655 (1994).

method as the simplest and fairest method for both parties.

*Subrogation under the Act*

Section 319 of the Act provides:

Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe, his personal representative, his estate or his dependents, against such third party to the extent of the compensation payable under this article by the employer; reasonable attorney's fees and other proper disbursements incurred in obtaining a recovery or in effecting a compromise settlement shall be prorated between the employer and employe, his personal representative, his estate or his dependents. The employer shall pay that proportion of the attorney's fees and other proper disbursements that the amount of compensation paid or payable at the time of recovery or settlement bears to the total recovery or settlement. Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe, his personal representative, his estate or his dependents, and shall be treated as an advance payment by the employer on account of any future installments of compensation.

77 P.S. § 671.

A Bureau regulation sets forth the procedures by which the mandate of the statute is carried out:

§ 121.18 Subrogation procedure.

(a) In the event of third party recovery under section 319 of the Workers' Compensation Act (77 P.S. § 671), Third Party Settlement Agreement, Form [LIBC]–380, shall be executed by parties thereon.

(b) If credit is requested against future compensation payable, Supplemental Agreement, Form LIBC–337, shall also be filed with the Department of Labor and Industry indicating the amount and period-

ic method of pro rata reimbursement of attorney fees and expenses.

34 Pa.Code § 121.18.

*Gross Method*

Form LIBC–380 aids in the calculation of an employer's subrogation entitlement according to the gross method, also referred to as the Bureau method. Under this method, the total recovery is reduced by the amount of the employer's lien to arrive at the balance of recovery. Next, the employer's pro rata share of recovery expenses, i.e. attorney's fees and costs, relative to its lien is determined by dividing the total workers' compensation lien by the gross recovery. The employer receives immediate reimbursement of its workers' compensation lien (compensation already paid to the claimant) reduced by the employer's pro rata share of recovery costs relative to the lien.

The balance of the total recovery is treated as a credit to the employer against future compensation payable. This credit is measured in weeks, referred to as the "grace period." The number of weeks in the grace period is determined by dividing the balance of the recovery by the claimant's weekly compensation rate.

Under the gross method, the employer makes no compensation payments during the grace period, but reimburses the claimant, in cash, the amount of costs attributable to that week of compensation. The weekly amount payable to the claimant is determined by dividing the balance of the recovery expenses by the number of weeks in the grace period.

The following reflects the application of the gross method to the facts of the present case. Claimant received a gross recovery of $725,000.00 and Employer's lien is $203,003.98. Employer's pro rata share of recovery expenses is 28% and the total expenses of recovery are $302,192.49. Employer receives immediate payment of $118,390.08 (lien amount less $84,613.90, 28% of recovery expenses). Claimant receives the balance of $304,417.43, after paying attorney's fees and costs.

Subtracting Employer's lien from the total recovery results in a credit against future

compensation payable of $521,996.02; dividing that amount by Claimant's weekly compensation rate of $276.63 results in a grace period of 1887 weeks, or 36–plus years. The balance of the expenses of recovery paid initially by Claimant is $217,578.59 ($302,192.49 less the $84,613.90 deducted from Employer's lien payment). During the grace period, Claimant would be reimbursed by receiving a weekly cash payment of $115.30 ($217,578.59 divided by 1887 weeks).

Thus: $725,000.00 - 203,003.98 = 521,996.02$ (credit fund)

$$\frac{203,003.98}{725,000.00} = 28\% \text{ (pro rata share of recovery costs)}$$

$$\frac{521,996.02}{276.63} = 1887 \text{ (weeks of grace period)}$$

---

### Net Method

Under the net method, the total recovery is reduced by the amount of the employer's lien and by attorney fees and costs to arrive at the balance of recovery, which is the credit for future compensation payable. The grace period is determined by dividing the credit for future compensation payable by the claimant's weekly compensation rate.

As with the gross method, the employer's pro rata share of the expenses of recovery is determined by dividing the amount of the employer's lien by the total recovery amount. The employer receives immediate payment of the lien as reduced by its pro rata share of recovery costs relative to the lien. The claimant receives the balance, less attorney's fees and costs.

Under this method, the employer also pays its share of recovery costs relative to its lien at the initial settlement. The employer makes no additional cash payments towards the balance of recovery expenses, but instead receives a shorter grace period.

As properly applied to this case, the net method yields the following results. The total recovery amount of $725,000.00 is reduced by $302,192.49, the total expenses of recovery, to reach a net recovery of $422,807.51. The net recovery of $422,807.51 is then reduced by $203,003.98, the amount of Employer's lien, to arrive at a credit against future compensation of $219,803.53. The credit amount of $219,803.53 is divided by Claimant's weekly compensation rate ($276.63) to arrive at a grace period of 794.57 weeks.[3]

Employer immediately receives payment of $118,390.09, the lien amount less $84,613.90, Employer's pro rata share of recovery expenses. After paying legal fees and costs, Claimant receives the balance of $304,417.42. The initial distribution of proceeds is the same under either method. However, under the net method, instead of making weekly payments to Claimant of $115.30 for 1887 weeks, Employer makes no payments for 794.57 weeks.

Thus: $725,000.00 - 302,192.49 = 422,807.51$ net

$$422,807.51 - 203,003.98 = \frac{219,803.53}{276.63} \text{ (credit fund)} = 794.57 \text{ weeks of grace period}$$

---

3. We have provided the preceding calculations to illustrate what the results would have been had the net method been properly applied by the WCJ. However, in this case the WCJ deviated from the net method; instead of subtracting Employer's entire lien amount from the net recovery, the WCJ subtracted only the adjusted amount actually received by Employer after its share of recovery expenses was deducted. By subtracting $118,390.09 from the net recovery, instead of the lien amount of $203,003.98, the WCJ calculated the grace period as 1100.2 weeks, instead of the correct total of 794.57 weeks. The WCJ evidently relied on Employer's Exhibit E for these calculations. We note that Claimant has not raised this particular error on appeal.

The net method of computation is premised upon the assumption that the employer is repaid the amount of its lien. *See Wheeling–Pittsburgh Steel Corp. v. Workmen's Compensation Appeal Board (McFaddin),* 138 Pa.Cmwlth. 204, 587 A.2d 852 (1991). Where the claimant cannot or will not reimburse the employer for compensation previously paid, the court has utilized another "net" formula, under which the entire net recovery (total recovery less costs) is applied to future credit weeks. *See Baus v. Workmen's Compensation Appeal Board (Nelson Co.),* 137 Pa.Cmwlth. 121, 585 A.2d 573 (1991).

### Discussion

Employer argues that the net method has been approved by the Supreme Court as an acceptable way to calculate an employer's subrogation rights, citing *Rollins Outdoor Advertising v. Workmen's Compensation Appeal Board,* 506 Pa. 592, 487 A.2d 794 (1985).

In *Rollins,* the claimant was totally disabled following a work-related accident. After settlement of a third party action, the claimant entered into an agreement with the employer's carrier whereby the carrier agreed to accept a portion of its accrued subrogation lien as full settlement in return for the claimant's agreement to waive any future compensation payable under the Act. The employer subsequently filed a termination petition alleging that the claimant was no longer totally disabled and that the claimant had received a substantial third party settlement.

The *Rollins* court first held that the agreement between the claimant and the insurance carrier was illegal and unenforceable.[4] Therefore, the court held that the employer was entitled to immediately recover the difference between the total amount of the accrued lien and the amount for which it had settled. Next, the *Rollins* court held that the employer was entitled to credit for future installments of compensation payable to the extent that the claimant's settlement exceeded the amount of compensation already paid. The *Rollins* court ordered the employer to repay its share of recovery expenses relative to the lien, plus interest, over the grace period. Finally, after reviewing the Board's application of the net formula, the court held that remand was necessary because so many facts remained in dispute.

Significantly, in *Rollins,* the employer/appellant did not raise the issue of whether the Board had applied the proper method to calculate the employer's rights and liabilities. Thus, the specific issue raised in this appeal was not decided by the *Rollins* court.

Employer also argues that the longer grace period provided by using the gross method is detrimental to an employer, because it requires the employer to periodically check on the claimant's status. Employer argues that Claimant here has pursued an engineering degree during the pendency of this case; therefore, Employer argues, it can be presumed that Claimant has returned to work at wages greater than or equal to his pre-injury wage. Assuming these facts, Employer asserts that it would be entitled to a suspension and that Claimant would receive a windfall for that portion of the grace period during which he was working.

However, under either method, the grace period runs only during that period where Claimant remains entitled to compensation, that is, only until such time as compensation is suspended or terminated. If the claimant returns to work with no loss of earnings, there is no liability for compensation and no credit to be taken. Should the claimant return to work at reduced earnings, credit can continue, with the weekly reimbursement of recovery costs adjusted to reflect the changed rate of compensation. Accordingly, the application of the gross method imposes no greater burden on an employer to monitor a claimant's continued entitlement to compensation.

---

4. Section 407 of the Act, 77 P.S. § 731, provides, inter alia, that agreements varying the amounts to be paid or the period during which compensation shall be payable under the Act shall be wholly null and void.

An employer's obligation to pay its proportionate share of recovery expenses relative to the total credit the employer receives is well-settled. In *Soliday v. Hires Turner Glass Co.*, 187 Pa. Superior Ct. 44, 142 A.2d 425 (1958), the court held that the claimant was entitled to reimbursement for fees, not only on the basis of the amount of previously paid compensation, but also on the basis of future compensation payable. The *Soliday* court stated that "the logical conclusion is inescapable that the legislature intended that the employer be required to share the burden of attorney's fees on the basis of its total benefit from the third-party recovery, that is, the total amount which the carrier would have been called upon to pay." *Id.* at 51, 142 A.2d at 428.

The Superior Court reaffirmed its holding in *Soliday* in *Wall v. Conn Welding & Machine Co.*, 197 Pa. Superior Ct. 360, 179 A.2d 235 (1962):

> It is without question that the employer received a direct benefit when relieved of future payments of workmen's compensation benefits.... It is also without question that justice and equity should require the employer to pay a fee based upon the direct benefits received by being relieved of payment of future compensation benefits....

*Id.* at 365, 179 A.2d at 237.

Our court has long relied on the gross method to achieve the reimbursement to the claimant dictated by the Act. The court first set forth the mechanics of this method in *Gold Star Service, Inc. v. Workmen's Compensation Appeal Board*, 21 Pa.Cmwlth. 1, 342 A.2d 459 (1975).[5] In subsequent decisions, the court obviously utilized the gross method, without discussion of the mathematical equations involved. *See*, e.g., *Hill v. Workmen's Compensation Appeal Board (J.F. Judski Associates)*, 117 Pa.Cmwlth. 540, 543 A.2d 1279 (1988), *petition for allowance of appeal denied*, 522 Pa. 615, 563 A.2d 500 (1989); *Reese v. Workmen's Compensa-*

*tion Appeal Board (Penn Nutrients, Inc.)*, 95 Pa.Cmwlth.325, 505 A.2d 405 (1986); *Frank Irey Jr., Inc. v. Workmen's Compensation Appeal Board (Klemencic)*, 67 Pa.Cmwlth. 512, 448 A.2d 647 (1982).

Our court first articulated a preference for the gross method in *Dasconio v. Workmen's Compensation Appeal Board (Aeronca, Inc.)*, 126 Pa.Cmwlth. 206, 559 A.2d 92 (1989). The *Dasconio* court reviewed the mechanics of the gross method, noting that the Bureau's regulation and form LIBC–380 reflected the adoption of that approach. In addition, the *Dasconio* court quoted William J. McKee, *Workers' Compensation*, XII Pa.Law Journal–Reporter, No. 12, pp. 3–4, as follows:

> The true genius of the bureau method is that it takes account of that most elusive factor in our calculations, the time-value of money. By paying the claimant each week a proportional share of fees and costs, the value, although not the actual amount, of the payments decreases over time in lock step with the depletion in the value of the employer's credit. For if we concede that the right to receive $100 [say] 17 years from now is worth less than $100 now, we must also concede that a $100 credit 17 years from now is worth less than a present credit in the same amount.

*Id.*, 559 A.2d at 102.

In subsequent decisions, this court continued to express its preference for the gross method and in those cases where the court was limited to following the net method as applied by the WCJ or the Board, the court made clear that the parties had not preserved an issue relating to the proper methodology to be applied. *See Wheeling–Pittsburgh Steel Corp. v. Workmen's Compensation Appeal Board (McFadden)*, 138 Pa.Cmwlth. 204, 587 A.2d 852 (1991); *Bell Telephone Co. of Pennsylvania v. Workmen's Compensation Appeal Board (Artuch)*, 127 Pa.Cmwlth. 569, 562 A.2d 427 (1989). In *Bell Telephone*, the court also

---

**5.** In *Gold Star,* the employer was ordered to pay the claimant the percentage of the claimant's weekly benefits equal to the percentage of the total recovery the claimant paid as costs of recovery. Thus, if claimant's recovery expenses are equal to one-third of the total recovery, the claimant receives one-third of his weekly benefit each week that the employer takes credit. This equation yields the same result as dividing the balance of the expenses of recovery by the weeks of the grace period; the claimant would receive the same weekly payment under either approach.

stressed that the case involved no future compensation payable and that the formula provided by Bureau Form LIBC–380 would, under those circumstances, yield the same result.

In *Pendleton v. Workmen's Compensation Appeal Board (Congoleum Corp.)*, 155 Pa. Cmwlth. 440, 625 A.2d 187 (1993), the court expounded on the advantages of the gross method. The court noted that the issue of methodology had been preserved on appeal, whereas in *Rollins* and *Dasconio* the courts had no choice other than to rely on the net method. The *Pendleton* court held that, in return for conferring the benefit of the grace period, Section 319 of the Act requires that fees and costs incurred to obtain that benefit be reimbursed to the claimant over the course of the grace period. The court concluded that the "simplest and fairest way, for both sides, is for the employer, in connection with each week of the grace period, to reimburse the claimant, in cash, the amount of costs attributable to that week of compensation." *Id.* at 190.

The court reiterated its preference for the gross method in *P & R Welding & Fabricating v. Workmen's Compensation Appeal Board (Pergola)*, 664 A.2d 657 (Pa.Cmwlth. 1995), *petition for allowance of appeal granted in part*, 543 Pa. 646, 674 A.2d 223 (1996), holding that "Section 319 requires the employer to share the burden of legal expenses in accordance with the benefit which it derives from the claimant's recovery in the third-party action." *Id.* at 662. The court again noted that questions relating to methodology had not been preserved on appeal in *Rollins* or *Dasconio*.

In the recent decision of *Darr Construction v. Workmen's Compensation Appeal Board (Walker)*, 677 A.2d 1301 (Pa.Cmwlth. 1996), *petition for allowance of appeal granted*, —— Pa. ——, 688 A.2d 173 (1997), the court again held that the use of the gross method, rather than the net method, was consistent with the mandate of Section 319. In *Darr*, we responded to the employer's arguments, in part, as follows:

> Employer argues that it is possible it would have to pay all of the expenses incurred in the third-party settlement and that this was not intended by the Act. Because Employer would only pay all of the expenses incurred ... if it receives all of the benefit of that settlement, that is, if the claimant continues to be disabled after exhausting the grace period, we disagree. In that case, the expenses are pro-rated as required in the Act because the employer has received the benefit of the entire third-party recovery and the employee has received no funds not subject to subrogation. In addition, this court rejects Employer's argument that the workers' compensation authorities are required to use the method preferred by an employer. We believe that the authorities should continue to strive for the result that is most fair to both parties.

*Id.* at 1309–10, n. 19.

As noted by the Board, the narrow question of whether the WCJ erred in applying the net method rather than the gross method is one of first impression. In reaching our decision, we do not rely solely on the preference long expressed by our court. Rather, after careful examination, we conclude that the net method fails to guarantee the equitable result required under Section 319 of the Act.

The most significant problem with the net method is that, under this calculation, the employer pays only its pro rata fees as calculated at the time of recovery; the employer then obtains a benefit in the form of future credit without reimbursing the claimant for the fees incurred to create the benefit fund. For instance, properly applying the net method in the present case would result in a future credit of $219,803.53 and a grace period of 794.57 weeks, more than 15 years. Should Claimant return to work after 794.57 weeks, Employer would have received a credit of $219,803.53, but Claimant alone would have borne the cost of recovering this amount.

The results of the net method are erratic. For the following discussion, assume a third-party recovery of $100,000, a workers' compensation lien of $50,000, recovery expenses of $40,000 and a weekly compensation rate of $500. Employer's pro rata share of recovery

expenses at settlement is 50%. Under the gross method, the balance of recovery is $50,000 and is credited to the employer over a grace period of 100 weeks, during which the claimant is reimbursed for the balance of his recovery expenses, $20,000, at the rate of $200 per week. Under the net method, the balance of recovery is $10,000, credited to the employer over a grace period of 20 weeks.

Assume the claimant remains totally disabled for 100 weeks. Under the gross method, the employer will have paid the claimant $20,000. But, under the net method, the employer will have paid the claimant $40,000 (80 weeks of compensation at $500 per week).

Next assume that the claimant returns to work at the end of 20 weeks. Under the gross method, the employer will have received a credit of $10,000 and will have paid the claimant $4000 as pro rata reimbursement. Using the net method, the employer likewise has received a credit of $10,000, but has not reimbursed the claimant for any of the recovery expenses incurred to obtain that credit.

Using the same figures, assume a workers' compensation lien of zero, i.e., the employer has been found liable but has not yet paid any compensation. Under the net method, the balance of recovery is $60,000, resulting in a grace period of 120 weeks. Under the gross method, the balance of recovery is $100,000, the grace period is 200 weeks and the claimant receives reimbursement for recovery expenses at the rate of $200 per week. After 200 weeks, the employer will have paid the claimant $40,000 under either method. However, under the net method, the employer receives a $60,000 credit up front and if the claimant's disability ceases after 120 weeks, the employer will not have paid its share of recovery costs as required by Section 319.

Thus, under the net method, the results vary depending on the amount of the third-party recovery, the amount of the employer's lien, and the duration of the claimant's disability. Regardless of the circumstances, however, use of the gross method ensures that the employer's obligations under the Act are satisfied.

This court has consistently held that where the employer continues to benefit from the third-party action because the total recovery is large enough to satisfy all or part of the employer's future compensation obligation, Section 319 requires the employer to pay its share of expenses attributable to the continuing benefit. *Darr*. Because the net method is inconsistent with the mandate of Section 319, we conclude that this method cannot be used in those subrogation cases involving future compensation payable.

Accordingly, the order of the Board is affirmed in part and reversed in part. We affirm the Board's order as it affirms the WCJ's decision dismissing Employer's petition for termination or modification and granting Employer's petition for modification; however, we reverse that part of the Board's order upholding the use of the net method in this case and remand the matter to the Board with instructions to remand to the WCJ for a determination of Employer's subrogation rights and liabilities based on the gross method of calculation.

### ORDER

NOW, April 23, 1997, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is affirmed in part and reversed in part. The Board's order is reversed as it relates to the method of calculation used to determine the Employer's subrogation rights and liabilities and is affirmed in all other respects. The matter is remanded to the Board with instructions to remand to the WCJ for a determination of the Employer's subrogation rights and liabilities using the gross method of calculation.

Jurisdiction relinquished.