# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Anna Griffis,                          :
                    Petitioner         :
                                       :
            v.                         :   No. 273 C.D. 2019
                                       :
Workers' Compensation Appeal           :
Board (Albert Einstein Healthcare      :
Network),                              :
                    Respondent         :


Albert Einstein Medical Center,        :
                    Petitioner         :
                                       :
            v.                         :   No. 280 C.D. 2019
                                       :   Argued:  June 9, 2020
Workers' Compensation Appeal           :
Board (Griffis),                       :
                    Respondent         :


**BEFORE:    HONORABLE RENÉE COHN JUBELIRER,** Judge
            **HONORABLE ELLEN CEISLER,** Judge (P.)
            **HONORABLE BONNIE BRIGANCE LEADBETTER,** Senior Judge

<u>**OPINION NOT REPORTED**</u>


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**                    **FILED:  July 15, 2020**

Before this Court are the cross-petitions for review filed by Anna Griffis (Claimant) and Albert Einstein Medical Center (Employer),[1] which have been consolidated, challenging the Workers' Compensation Appeal Board's (Board) February 13, 2019 Order.  In that Order, the Board affirmed a Workers'

---

[1] Claimant's Petition for Review identifies as her employer Albert Einstein Health Network, of which Employer is a subsidiary corporation.

Compensation Judge's (WCJ) May 10, 2018 Decision (2018 WCJ Decision) granting Claimant's Penalty Petition based on Employer's violation of the Workers' Compensation (WC) Act[2] (WC Act), but imposing no penalty. The Board also affirmed, as modified, the 2018 WCJ Decision granting Employer's Modification and Suspension Petition, directing Claimant to pay a lump sum from her third-party recovery in a medical malpractice action to Employer and suspending Claimant's benefits until she reimbursed Employer.[3] The WCJ ordered the lump sum payment to reimburse Employer for the indemnity and medical benefits Employer had paid between the date of her third-party recovery in 2013, and the 2017 WCJ decision approving subrogation, which Employer characterizes as an "accrued lien." The Board modified the 2018 WCJ Decision by reducing the amount of Claimant's lump sum payment to Employer to exclude the medical benefits it had paid since the settlement of the third-party action pursuant to *Whitmoyer v. Workers' Compensation Appeal Board (Mountain Country Meats)*, 186 A.3d 947 (Pa. 2018).

On appeal, Claimant argues the Board erred in affirming the 2018 WCJ Decision, which did not impose a penalty for Employer's violation of the WC Act, by unilaterally suspending its payment of benefits. Claimant also asserts that the Board erred in affirming, even as modified, the suspension of her benefits based on her non-payment of any accrued lien because no such lien exists under *Whitmoyer* and/or *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 131 A.3d 572 (Pa. Cmwlth. 2016). Employer argues there was no error in suspending Claimant's benefits or in not awarding a penalty, but asserts the Board

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4; 2501-2710.

[3] In a case argued on the same day as this matter, *Griffis v. Workers' Compensation Appeal Board (Albert Einstein Health Network)* (Pa. Cmwlth., No. 272 C.D. 2019, filed July 15, 2020) (*Griffis I*), the Court addresses Claimant's arguments that her third-party recovery is not subject to subrogation under Section 319 of the WC Act, 77 P.S. § 671.

erred in recalculating Employer's accrued lien to exclude the medical benefits it has paid since the date of her third-party recovery and from its future recovery from Claimant's medical benefits based on *Whitmoyer*. Employer asserts that *Whitmoyer* does not apply to a situation where, as here, the third-party action was a medical malpractice action subject to Section 508 of the Medical Care Availability and Reduction of Error (MCARE) Act,[4] 40 P.S. § 1303.508, and *Protz*. The Pennsylvania Association For Justice, as amicus curiae, argues that the MCARE Act prohibits Employer from asserting a subrogation claim under Section 319 of the WC Act against any of Claimant's past or future WC benefits. Accordingly, the issues before the Court primarily involve the interplay of Section 319 of the WC Act and Section 508 of the MCARE Act, as well as the recent decisions in *Whitmoyer* and *Protz*, and the impact these statutory provisions and this precedent have on an employer's right to subrogate a third-party award from a medical malpractice action arising from the treatment of a work-related injury.

## I. Background

### A. Factual Background

The full factual background of Claimant's work-related injury, her third-party medical malpractice action, and the 2017 proceedings before a WCJ that resulted in the grant of Employer's prior modification petition and recognition of its subrogation rights under Section 319 of the WC Act is set forth in *Griffis v. Workers' Compensation Appeal Board (Albert Einstein Health Network)* (Pa. Cmwlth., No. 272 C.D. 2019, argued June 9, 2020) (*Griffis I*). We briefly recount the facts pertinent to this matter.

---

[4] Act of March 20, 2002, P.L. 154, *as amended*, 40 P.S. § 1303.508.

3

On April 28, 2009, Claimant sustained a work-related injury to her neck, and, during her initial treatment, Claimant's spinal cord injury was not properly diagnosed and treated. Ultimately, Claimant had to undergo emergency surgery, which left her with ongoing neurological dysfunctions. Claimant filed a medical malpractice action against the doctors who initially treated her, contending they did not properly diagnose her injuries and that, as a result, she incurred additional medical expenses, future disability, and pain and suffering. In April 2013, an arbitrator found those doctors negligent and awarded Claimant $2.5 million and $375,000 to her husband. This award was capped, pursuant to a high-low agreement, at $2.4 million. Claimant's share of the award is $2.088 million.

Prior to the third-party action, Employer accepted an injury described as a cervical sprain pursuant to a Notice of Temporary Compensation Payable, which converted by operation of law into a Notice of Compensation Payable. This injury was expanded in June 2013 by a stipulation of the parties. Thereafter, Employer filed modification petitions seeking to subrogate Claimant's third-party recovery under Section 319. Claimant denied the allegations.[5] On August 1, 2017, a different WCJ issued a decision finding that Employer had met its burden of establishing its entitlement to subrogation and granting Employer's modification petition (2017 WCJ Decision). Upon Claimant's appeal, the Board affirmed.

---

[5] Claimant also filed a review petition seeking to expand the description of her work injury to include a psychological component, which Employer acknowledged existed, and additional cervical injuries, which Employer denied as being not work related. The WCJ added the psychological component, but rejected Claimant's attempt to add additional cervical injuries. The Board affirmed. Claimant's challenge to this determination is at issue in *Griffis I*.

4

## B. The Petitions

Following the 2017 WCJ Decision, Employer stopped making payments to Claimant and her counsel beginning on or around October 3, 2017. Claimant filed the Penalty Petition on November 3, 2017, alleging that Employer unilaterally stopped payment of Claimant's pro rata share of fees and expenses related to the third-party recovery. (2018 WCJ Decision, Finding of Fact (FOF) ¶ 1.) She sought the imposition of a 50% penalty and unreasonable contest attorney's fees. (Supplemental Reproduced Record (S.R.R.) at 153b-54b.) In its answer, Employer denied the allegations and asserted it was exercising its right to subrogation pursuant to the 2017 WCJ Decision. (FOF ¶ 1.) Employer filed its Modification and Suspension Petition on December 22, 2017, for the purpose of protecting its subrogation interests, restating its position that it could stop paying Claimant's pro rata benefits pursuant to the 2017 WCJ Decision. (*Id.* ¶ 2.) Claimant filed an answer denying the allegations and seeking unreasonable contest attorney's fees. The Petitions were consolidated and assigned to the WCJ.

## C. Proceedings Before the WCJ and the 2018 WCJ Decision

The parties presented documentary evidence and argument. Claimant offered WCJ decisions from 2013, 2014, and 2017.[6] She also presented her own statement that she had not received any payments from Employer since October 3, 2017, and a statement from her counsel's office reflecting that counsel had not received any payment of attorney's fees since that date. Claimant also submitted her litigation costs and a quantum meruit statement for her counsel. Employer submitted the 2017

---

[6] Respectively, the WCJ's decisions in 2013 and 2014 expanded the definition of Claimant's work-related injury and dismissed, without prejudice, a prior modification petition filed by Employer seeking to assert its subrogation interest. The 2017 WCJ Decision is at issue in *Griffis I.*

5

WCJ Decision and a listing of the payments it had made since April 2013. Both parties presented correspondence between counsel after the 2017 WCJ Decision. By letter dated September 27, 2017, Employer advised Claimant that it sought $265,507.01 as reimbursement for the medical and indemnity benefits it had paid since the date of third-party recovery, which it characterized as its accrued lien, and that it was asserting its right to a future credit against Claimant's future benefits. (*Id.* ¶ 3(e).) Employer attached to that letter a Third-Party Settlement Agreement (TPSA) setting forth the calculations supporting its claims. (*Id.*) Claimant's counsel responded in an October 4, 2017 letter, agreeing to Employer's future credit and pro rata share of cost calculations, but asserting that Claimant had no legal obligation to reimburse Employer for its "accrued lien." (*Id.* ¶ 3(f).) Therein, Claimant asserted that the 2017 WCJ Decision "did not specifically state that [Employer] was entitled to reimbursement of the accrued lien." (*Id.*) Per advice of its counsel, Employer stopped paying Claimant's pro rata share of her compensation payments as of October 3, 2017. (*Id.* ¶ 3(g).)

Reviewing the evidence, the WCJ found that Employer had violated the WC Act when, on or about October 3, 2017, it unilaterally stopped making the pro rata share payments to Claimant. (2018 WCJ Decision, Conclusion of Law (COL) ¶ 2.) However, the WCJ did not award a monetary penalty for this technical violation of the WC Act, finding that "Claimant ha[d] retained a substantial windfall in failing to reimburse the accrued lien payable from the third-party settlement." (*Id.* ¶ 6.) The WCJ held that Claimant was "obligated to immediately reimburse [Employer] for the accrued lien" and that Employer had proven its "entitlement to a full suspension of Claimant's benefits until such time as the accrued lien [was] reimbursed." (*Id.* ¶¶ 3-4.) Further, the WCJ concluded, Employer was "entitled to

6

a future credit for the balance of recovery," "over the grace period pursuant to the [TPSA] to which the parties ha[d] agreed" subject to its payment to Claimant of its pro rata share of the costs. (*Id.* ¶ 3.) Upon Claimant's payment to Employer of the full accrued lien, the WCJ held that Claimant's "benefits will be modified to the agreed pro rata share as calculated in the [TPSA]." (*Id.* ¶ 5.) The amount of the accrued lien for which immediate payment was due, as set forth in the TPSA, was $265,507.01.[7] The amount of Claimant's pro rata share of the third-party litigation expenses was 39.7366% of the balance of recovery, or $322.20 per week.

### D. The Board's Opinion

Claimant and Employer appealed to the Board. Claimant argued the WCJ erred in directing that she immediately reimburse Employer the accrued lien and approving the full suspension of her benefits until the accrued lien was reimbursed.[8] Claimant further asserted the WCJ abused his discretion in not awarding a penalty despite finding a violation of the WC Act. Employer challenged the WCJ's conclusion that it had violated the WC Act, asserting it had not unilaterally suspended its payments but had done so in accordance with the 2017 WCJ Decision.

The Board disagreed with Claimant that the WCJ erred in ordering immediate reimbursement of Employer's accrued lien. The Board held that the award of an immediate lump sum repayment for the benefits Employer had paid is within a

---

[7] This calculation was based on the payment of $196,439.20 in indemnity benefits and $244,138.78 in medical benefits, for a total accrued lien of $440,577.98, which was reduced by $175,070.97, the amount of litigation expenses attributed to the accrued lien. (Board Opinion (Op.) at 6-7 & n.5.)

[8] Claimant further argued that the WCJ erred in granting the Modification and Suspension Petition for the reasons she asserted in her appeal from the 2017 WCJ Decision, which the Board rejected in its opinion denying Claimant's appeal in *Griffis I*. The Board in this matter observed that, having already rejected those arguments, it would not discuss them again.

7

WCJ's authority. (Board Opinion (Op.) at 5 (citing *Ward v. Workmen's Comp. Appeal Bd. (Sun Ref. & Mktg. Co.)*, 599 A.2d 1013, 1015 (Pa. Cmwlth. 1991)).) Further, the Board explained that under Section 508 of the MCARE Act and *Protz*, an employer was limited to the "subrogation of indemnity and medical benefits paid after the medical malpractice third-party adjudication." (*Id.* at 4.) The Board held that, pursuant to *Protz*, an employer is entitled to subrogate "all benefits paid after the claimant's medical malpractice claim settled, not as of the date the [employer] sought reimbursement," and this entitlement begins upon the recovery of the third-party award, here April 2, 2013. (*Id.* at 4, 8-9.) Upon the issuance of the 2017 WCJ Decision, the Board concluded, Claimant had an obligation to immediately reimburse Employer, and, given Claimant's refusal to do so, the WCJ did not err in suspending Claimant's indemnity benefits until such time as the accrued lien was repaid. It was only after that reimbursement, the Board held, could the balance of recovery be used to provide Employer a "grace period" during which the indemnity benefits due to Claimant are deemed to have been prepaid save for the payment of Claimant's pro rata share of litigation costs. (*Id.* at 5-6, 9.)

As for the amount to be reimbursed, the Board agreed with Claimant in part. The Board observed that, after *Protz*, the Supreme Court issued *Whitmoyer* in which, according to the Board, the Supreme Court concluded, based on the plain language of Section 319 of the WC Act, that an employer's "entitlement to subrogation of benefits paid after the third-party recovery is limited to future indemnity benefits, specifically excluding reimbursement of future medical benefits." (*Id.* at 4-5, 9 (citing *Whitmoyer*, 186 A.3d at 957-58).) Pursuant to *Whitmoyer*, the Board held that Employer was precluded "from recovering medical expenses paid after Claimant's third-party recovery" and that the repayment amount authorized by the

8

WCJ, $265,507.01, included medical benefits Employer paid after the date of Claimant's third-party recovery. (Board Op. at 9-10.) Therefore, the Board reduced the amount from $265,507.01 to $118,380.97,[9] but held that this did not alter the pro rata reimbursement compensation rate. (*Id.* at 10 & n.9.)

The Board then addressed the WCJ's grant of the Penalty Petition without awarding Claimant penalties. Initially, the Board rejected Employer's arguments that it did not violate the WC Act when it suspended Claimant's payments, reasoning that the 2017 WCJ Decision had not authorized the suspension of Claimant's benefits. (*Id.* at 11.) The Board also rejected Claimant's contention that penalties should have been awarded based on that violation, concluding no penalty was appropriate or necessary under these circumstances. The Board held that this situation was very similar to that in *DeVore v. Workmen's Compensation Appeal Board (Sun Oil Company)*, 645 A.2d 917, 920 (Pa. Cmwlth. 1994), wherein this Court held that it was not an abuse of discretion not to award penalties if, ultimately, the WCJ orders the same relief as that taken by the employer. Because the WCJ ultimately ordered the suspension of Claimant's benefits until she reimbursed Employer its accrued lien, the Board held there was no error in the 2018 WCJ Decision.

---

[9] The Board arrived at this amount by subtracting the $196,439.20 in indemnity benefits paid from Claimant's $2.088 million third-party recovery, resulting in $1,891,560.80. (Board Op. at 10.) The Board used that amount to calculate the reimbursement rate by dividing the accrued lien by the third-party recovery and multiplying the result by 100 for a reimbursement rate of 9.4080%, ($196,439.20/$2,088,000 x 100 = 9.4080%). (*Id.*) Then, it multiplied the expenses of recovery, $829,700.59, by 9.4080% to ascertain the amount of those expenses attributable to the accrued lien, which is $78,058.23. (*Id.*) Subtracting $78,058.23 from the accrued lien of $196,439.20 results in the net accrued lien of $118,380.97. (*Id.*)

9

Claimant and Employer now petition this Court for review.[10,11]

## II.    Appeal to this Court

### A. *Modification and Suspension Petition*

The arguments presented involve the interplay between Section 319 of the WC Act, Section 508 of the MCARE Act, *Whitmoyer*, and *Protz*, and their impact on an employer's right to subrogate a third-party award issued in a medical malpractice action arising from the treatment of a work-related injury. We first set forth these statutory provisions and precedent to aid our review.

### 1. Relevant Legal Principles

Initially, we note the questions before the Court require the interpretation of statutory provisions and, therefore, are questions of law over which this Court's review is *de novo*. *Whitmoyer*, 186 A.3d at 954. It is well settled that, in interpreting statutory language, the object is to "ascertain and effectuate the intention of the General Assembly." Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(a). In doing so, we must give meaning to each word and provision of the statute. *Id.* "[T]he statute's plain language generally offers the best indication of legislative intent, and we are instructed to give the statute its obvious meaning whenever the language is clear and unambiguous." *Whitmoyer*, 186 A.3d at 954 (citing 1 Pa.C.S. § 1921(b)). Only if the statutory language is ambiguous should a

---

[10] Our review in WC matters "is limited to a determination of whether constitutional rights were violated, errors of law were committed, or the necessary findings were supported by substantial, competent evidence." *Griffin v. Workers' Comp. Appeal Bd. (Thomas Jefferson Univ. Hosp.)*, 745 A.2d 61, 63 n.3 (Pa. Cmwlth. 1999).

[11] By Memorandum Opinion and Order dated July 9, 2019, a single judge of this Court denied Claimant's Petition for Supersedeas following telephone argument during which the parties agreed to maintain the status quo. *Griffis v. Workers' Comp. Appeal Bd. (Albert Einstein Healthcare Network)* (Pa. Cmwlth., No. 273 C.D. 2019, filed July 9, 2019).

10

court examine factors beyond the text. *Id.* With these principles in mind, we turn to the statutory provisions at issue and the recent judicial interpretations thereof.

a. Section 508 of the MCARE Act and *Protz*

Section 508 of the MCARE Act addresses the effect a medical malpractice plaintiff's receipt of payments from a collateral source has on the plaintiff's recovery in that action and the ability of the provider of those collateral benefits to subrogate any medical malpractice award obtained. Section 508 provides:

> (a) General rule.--Except as set forth in subsection (d), **a claimant** in a medical professional liability action **is precluded from recovering damages for past medical expenses or past lost earnings incurred to the time of trial** to the extent that the loss is covered by a private or public benefit or gratuity that the claimant has received prior to trial.
>
> (b) Option.--The claimant has the option to introduce into evidence at trial the amount of medical expenses actually incurred, but the claimant shall not be permitted to recover for such expenses as part of any verdict except to the extent that the claimant remains legally responsible for such payment.
>
> (c) **No subrogation**.--Except as set forth in subsection (d), **there shall be no right of subrogation or reimbursement from a claimant's tort recovery with respect to a public or private benefit covered in subsection (a).**
>
> (d) Exceptions.--The collateral source provisions set forth in subsection (a) shall not apply to the following:
>
> > (1) Life insurance, pension or profit-sharing plans or other deferred compensation plans, including agreements pertaining to the purchase or sale of a business.
> >
> > (2) Social Security benefits.
> >
> > (3) Cash or medical assistance benefits which are subject to repayment to the Department of Public Welfare.

11

(4) Public benefits paid or payable under a program which under Federal statute provides for right of reimbursement which supersedes State law for the amount of benefits paid from a verdict or settlement.

40 P.S. § 1303.508 (emphasis added). In *Protz*, this Court reviewed Section 508 in relation to a claimant's challenge to a WCJ decision granting her employer subrogation related to her third-party medical malpractice award. Therein, the employer filed a modification petition under Section 319 of the WC Act in December 2012 seeking to subrogate the third-party award entered into as of November 2012. The claimant responded that the employer was not entitled to any subrogation of her third-party recovery under the MCARE Act. *Protz*, 131 A.3d at 574-75. Concluding the language in Section 508(a) and (c) imposed a bar to an employer's subrogation only of "past medical expenses and past lost earnings" incurred to the time of trial, the WCJ in *Protz* held that the employer could seek subrogation with respect to its future payments to the claimant. 131 A.3d at 575-76. The Board affirmed.

The claimant appealed to this Court, asserting that the silence in Section 508 regarding the subrogation of future benefits should be construed as prohibiting that subrogation. Recounting the absolute right to and purpose of subrogation under the WC Act and the language of Section 508, we disagreed that the silence should be construed in that manner. Applying a plain meaning interpretation of that section, we affirmed the allowance of future subrogation of the third-party award in a medical malpractice action and noted that doing so was consistent with the purposes of subrogation to prevent double recovery by claimants and to prevent employers from having to compensate claimants for the negligence of third parties. *Protz*, 131 A.3d at 577-78. Further, we held, the General Assembly's enactment of the MCARE Act changed the prior state of the law, which had allowed employers to subrogate both

12

past and future benefits. *Id.* at 578. Accordingly, we affirmed the "order awarding [the e]mployer and [i]nsurer subrogation of [the c]laimant's third[-]party medical malpractice recovery with respect to the award for her future medical expenses and wage loss." *Id.*

b. Section 319 of the WC Act and *Whitmoyer*

Section 319 of the WC Act sets forth the right of employers to subrogate third-party awards obtained by claimants and provides, in relevant part:

> **Where the compensable injury is caused** in whole or in part **by the act or omission of a third party, the employer shall be subrogated to the right of the employe** . . . to the extent of the compensation payable under this article by the employer; reasonable attorney's fees and other proper disbursements incurred in obtaining a recovery or in effecting a compromise settlement shall be prorated between the employer and employe . . . . The employer shall pay that proportion of the attorney's fees and other proper disbursements that the amount of compensation paid or payable at the time of recovery or settlement bears to the total recovery or settlement. **Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe, . . . and shall be treated as an advance payment by the employer on account of any future instalments of compensation.**

77 P.S. § 671 (emphasis added). Our Supreme Court has described subrogation under Section 319 as follows:

> Subrogation in our workers' compensation system is a significant and firmly established right. Specifically, while subrogation is an important equitable concept that applies whenever a debt or obligation is paid by one party though another is primarily liable, . . . , in the realm of workers' compensation, it has assumed even greater stature. Our Court has stated that the statutory right to subrogation is "absolute and can be abrogated only by choice." . . . . This is so because the statute granting subrogation "clearly and unambiguously" provides that the employer "shall be subrogated" to the employee's right of recovery. . . . Thus,

13

the importance and strength of subrogation in our system of workers' compensation cannot be understated.

*Brubacher Excavating, Inc. v. Workers' Comp. Appeal Bd. (Bridges)*, 835 A.2d 1273, 1275-76 (Pa. 2003) (quotations and citations omitted). The policy behind subrogation under the WC Act is to prevent double recovery for the same injury, to prevent an employer from having to pay compensation due to the wrongful acts of a third party, and to prevent a third party from escaping liability for its wrongful conduct. *Poole v. Workers' Comp. Appeal Bd. (Warehouse Club, Inc.)*, 810 A.2d 1182, 1184 (Pa. 2002).

Prior to 2018 and the Supreme Court's decision in *Whitmoyer*, an employer could recover its subrogation interest by obtaining repayment of its accrued subrogation lien and by taking a credit against not only a claimant's future indemnity payments, minus the pro rata share, but also the claimant's future medical benefits until the balance of recovery was exhausted. At that point, the employer again became responsible for paying claimants the full amount of indemnity and medical benefits due. However, our Supreme Court changed the interpretation of the type of compensation an employer could recover through its subrogation interest in *Whitmoyer*. In that case, the claimant challenged his employer's attempt to recover its subrogation interest entirely from his future medical benefits because he was no longer receiving indemnity benefits based on a prior commutation of those benefits. *Whitmoyer*, 186 A.3d at 950. After paying the claimant full medical benefits for 13 years after the claimant's third-party settlement, the employer filed a modification petition asserting its right to a credit that would reduce its obligation to pay only 26.09% of the claimant's medical benefits until the balance of recovery was exhausted. The claimant argued that the phrase "future instalments of compensation," 77 P.S. § 671, used in Section 319 of the WC Act did not apply to

14

the payment of medical benefits, which are not paid in instalments. The WCJ granted the modification petition, and the Board affirmed. This Court affirmed as well, concluding that the term "compensation" referred to both indemnity and medical benefits.

On appeal to the Supreme Court, the claimant argued that this Court's interpretation read the word "instalments" out of Section 319. Examining the plain language of Section 319, the Supreme Court agreed, reasoning that the term "compensation" and the phrase "instalments of compensation" do not carry the same meaning and that only indemnity benefits are paid in "instalments" per Section 308 of the WC Act, 77 P.S. § 601 (providing that "compensation payable under [the WC Act] in periodic instalments, as the wages of the employe were payable before the injury"). *Whitmoyer*, 186 A.3d at 955. The Supreme Court further reasoned that, under Section 319's plain language, the General Assembly intended the balance of recovery to "be treated as an advance payment by the employer on account of any future instalments of compensation," and applying this provision only to indemnity benefits, "which are known amounts paid at established intervals," reflects that the claimant is "simply be[ing] paid in advance[, via the retention of the excess award,] for outstanding instalments owed to" the claimant. *Id.* at 955-56. Future medical expenses, the Supreme Court held, are not known at the time of settlement and are required by the WC Act to be paid upfront by employers and to require claimants to relinquish some of their "advance payment" in order for the employer to recoup its costs was "in derogation of the plain meaning of that term." *Id.* at 957 (internal quotations omitted).

Finally, concluding its analysis was supported by the unambiguous statutory language, the Supreme Court stated that "discussion of the purpose or rationale

15

behind [S]ection 319 . . . is unnecessary." *Id.* at 958. Nonetheless, it found that, even if it engaged in "an ambiguity analysis," its conclusion would not change and that "reading 'instalments of compensation' to exclude medical expenses does not undermine the rationale behind [S]ection 319." *Id.* It explained, first, that "[r]egarding the potential ill of an employee making a 'double recovery,' . . . this would be impossible to know in the context of a settlement, where the amount of recovery is a lump sum that does not neatly or necessarily break down by category of damages." *Id.* Second, protecting an employer from having to pay for injuries resulting from the negligence of a third party "has its limits" and the WC Act's "default is to hold an employer liable for a[ claimant's] work-related injury," a liability that is temporarily circumscribed only to the extent of the third-party recovery. *Id.* In *Whitmoyer*, the employer conceded that, even if the Court found in its favor, "its liability would be circumscribed 'only to the extent of [claimant's] third party recovery,'" and once that amount is exceeded, employer/insurer would again be responsible. *Id.* For these reasons, the Supreme Court held that **"an employer is not permitted to seek reimbursement for future medical expenses from the [claimant's] balance of recovery**." *Id.* (emphasis added).

2. Parties' Arguments

a. Claimant's Arguments

Claimant argues as follows. Applying the principles set forth in Section 508 of the MCARE Act, Section 319 of the WC Act, *Whitmoyer*, and *Protz*, Employer is only authorized to subrogate Claimant's **future** indemnity benefits and this entitlement, at least in a medical malpractice action, did not arise until the 2017 WCJ Decision that officially recognized the subrogation interest. At the time of the third-party settlement in April 2013, no lien had accrued because the payments made prior

16

to that date were past payments for medical and wage loss benefits that are not recoverable under Section 508 of the MCARE Act and *Protz*. There was no accrued lien that Claimant had to pay Employer because its entitlement to recover did not begin until Employer proved its case on its modification petition, here, on August 1, 2017, the date of the 2017 WCJ Decision. Absent that determination, there was no "overpayment" for which she had to immediately repay Employer in a lump sum. Even if Claimant did have to pay a lump sum to reimburse a lien, the amount ordered by the WCJ and set forth in the TPSA was erroneous under *Whitmoyer* because it included medical benefits that were paid after the date of her third-party recovery, an error recognized by the Board. Under Claimant's interpretation, even though Employer would not receive a lump sum payment, it is still recovering its monies by taking a credit against her future indemnity benefits, subject to the payment of Claimant's pro rata share of the litigation expenses related to the third-party award. Finally, per *CNA Insurance, Co. v. Workmen's Compensation Appeal Board (Romeo)*, 578 A.2d 1375 (Pa. Cmwlth. 1990), the grace period did not begin until the WCJ awarded relief, not as of the date of her third-party recovery, and, therefore, no payment to Employer was immediately due at the time of the settlement.

b. Employer's Arguments

In opposition to Claimant's appeal, Employer argues as follows. Claimant's challenge to Employer's subrogation rights based on the MCARE Act and *Protz* were not raised before the WCJ or the Board in the 2017 WCJ Decision and, therefore, are not preserved for appellate review. These arguments are a collateral attack on the 2017 WCJ Decision that should not be permitted in the appellate review of the 2018 WCJ Decision. Even if the arguments are preserved, Claimant misreads *Protz* to support her claims that no accrued lien exists that she must immediately

17

repay and that Employer's rights are limited to a credit against her future indemnity benefits less the pro rata share. *Protz* contains no language supporting Claimant's assertions and reflects a balance between Section 319 of the WC Act and Section 508 of the MCARE Act. The rationale for the limitation on the subrogation of past medical and indemnity benefits paid is the fact that such amounts could not be claimed as damages in a third-party medical malpractice action pursuant to Section 508(a) of the MCARE Act. As Claimant could not recover the amount Employer paid prior to the third-party action's settlement, Employer could not assert a subrogation claim for those benefits because Claimant was not being paid twice for those benefits. However, Claimant was not precluded from pleading and proving future wage loss and medical costs during that trial and, therefore, Employer is not precluded from asserting a subrogation lien calculated on the basis of its payment of those benefits after the date of the third-party medical malpractice settlement. Neither *Protz* nor the MCARE Act rescinded Employer's subrogation right to recover anything paid after the third-party settlement. Claimant's reliance on the word "future" used in *Protz* to argue that subrogation does not arise until a WCJ decision is issued misreads the holding. The terms "past" and "future" as used in *Protz* mean, respectively, payments made before the date of the civil trial or settlement and payments made after the civil trial or settlement. Employer sought immediate reimbursement only for those "future" payments made after the date Claimant settled her third-party action, as supported by its record of payments, in the form an accrued lien and then a credit against Claimant's benefits until any balance of recovery is exhausted. The 2018 WCJ Decision properly recognized Employer's right, after the 2017 WCJ Decision, to be immediately reimbursed for the amounts it had paid Claimant and on Claimant's behalf since the settling of the

18

third-party action and directed Claimant to make such payment. While it is presumed that claimants will cooperate and tender the accrued lien, WCJs are empowered to order the payment of a lump sum if a claimant fails to do so, *Ward*, 599 A.2d at 1015, and to suspend the claimant's benefits until the accrued lien is reimbursed, *Wheeling-Pittsburgh Steel Corporation v. Workmen's Compensation Appeal Board (McFadden)*, 587 A.2d 852, 854-55 (Pa. Cmwlth. 1991).

In support of its own appeal, Employer argues as follows. The Board erred when it applied *Whitmoyer* to reduce the amount of Claimant's reimbursement from $265,607.01 to $118,380.97. The Board based this reduction on its conclusion that "[w]here a defendant is entitled to subrogation for the claimant's future benefits, such subrogation is limited to indemnity benefits only; and the defendant is barred from subrogating any future medical expenses. *Whitmoyer*." (Board Op. at 9.) *Whitmoyer* does not apply to MCARE subrogation because that case did not involve a medical malpractice action arising out of the treatment of a claimant's work injury. Therefore, the Supreme "Court did not contemplate or address an MCARE subrogation claim." (Employer's Brief (Br.) at 65.) It notes that, because *Whitmoyer* was not an MCARE case, the employer was able to recover all of the payments it made prior to the date of the third-party recovery. While Section 319 authorizes only a "credit against 'any future instalments of compensation,'" the MCARE Act does not include any such limiting language or use the word "compensation." (*Id*. at 66 (quoting 77 P.S. § 671).) Rather, it limited the collateral source rule for medical malpractice actions by disallowing plaintiffs to seek damages for **past** lost earnings and medical expenses and precluding subrogation for those amounts. No similar limitations are found in Section 508 of the MCARE Act for **future** medical expenses and lost earnings. Allowing employers in medical malpractice actions to

19

take a credit against both future indemnity and medical benefits, therefore, is consistent with the purposes of subrogation – to prevent double recovery and place the liability for the damages on the responsible third party. Therefore, *Whitmoyer* should not be applied under these circumstances. However, if *Whitmoyer* did apply, the Board erred in using it to reduce Employer's accrued lien, which is subject to immediate reimbursement (the first component of Section 319 subrogation), rather than to calculate the grace period during which time Employer recovers the balance of recovery by taking a credit against future payments of benefits (the second component of Section 319 subrogation). *Whitmoyer* does not affect the first component of subrogation, the calculation of the accrued lien; it only altered how the second component, the balance of recovery, is administered, as that is where the phrase "instalments of compensation" is found. 77 P.S. § 671. *Whitmoyer* should not be read to limit the recovery of medical costs already paid as of the date of the subrogation calculation.

### c. Claimant's Reply

In her reply brief, Claimant responds to Employer's contentions that she waived her arguments regarding the recalculation of Employer's subrogation reimbursement. She argues that the Supreme Court did not issue its decision in *Whitmoyer* until 2018, which was after both the 2017 WCJ Decision and 2018 WCJ Decision. She therefore could not rely on *Whitmoyer* at the time of the WCJ proceedings, and she raised *Whitmoyer* at the first opportunity to do so and, therefore, it is not waived per *Thompson v. Workers' Compensation Appeal Board (Exelon Corporation)*, 168 A.3d 408 (Pa. Cmwlth. 2017). Further, Employer did not challenge Claimant's assertion of arguments based on *Protz* before the WCJ in the current proceedings, and, therefore, its own waiver arguments are waived.

d. The Pennsylvania Association For Justice's Arguments

The Pennsylvania Association For Justice, as amicus curiae, argues that Section 508(c) of the MCARE Act precludes Employer from asserting any subrogation claim or credit against Claimant's future benefits based on the payment of past benefits and, therefore, *Whitmoyer* does not apply. It maintains that Section 508 of the MCARE Act prohibits the recovery of past lost wages and past medical benefits covered by public or private benefit as damages in medical malpractice claims and states that there is no right to subrogation or reimbursement from a tort recovery with respect to such public or private benefit, which is what Employer is attempting to do in this matter. Under the plain language of the MCARE Act, the Pennsylvania Association For Justice contends that Employer's arguments that it is entitled to repayment of its lien and to a credit against Claimant's future indemnity benefits must be rejected.

3. Discussion
   a. Whether Claimant waived her arguments based on *Protz* and *Whitmoyer*.

It is well settled that the Court may not address issues that were not raised before an administrative agency. Pennsylvania Rule of Appellate Procedure 1551(a), Pa.R.A.P. 1551(a). However, in *Thompson*, we held that a claimant was not barred from challenging the validity of her impairment rating evaluation (IRE) by failing to timely raise that issue where, during the course of the ongoing workers' compensation proceedings, the statutory provision authorizing the IRE was declared unconstitutional. 168 A.3d at 412 n.4. Because the claimant's appeal implicated the validity of the IRE and that statutory provision and she had raised that issue at the first opportunity, we concluded she was not precluded from relying on the change in the law to challenge her IRE. *Id.*

21

Claimant raised *Protz* in her Penalty Petition. (S.R.R. at 153b.) Claimant's Penalty Petition was premised on Employer not paying the pro rata share of the litigation expenses. (*Id.*) Claimant also raised *Protz* in a letter to Employer early on in this litigation, which was submitted as evidence in this matter. (*Id.* at 152b.) The parties discussed Claimant's reasons for filing the Penalty Petition and why she asserted no lump sum reimbursement was due during the December 19, 2017 hearing. (*Id.* at 163b-69b.) During that hearing, Employer's counsel noted that it waited until after Claimant filed her appeal from the 2017 WCJ Decision to send Claimant's counsel "the [TPSA,] which include[d] a requirement that the [E]mployer be provided immediate reimbursement of $265,000 and some change." (*Id.* at 166b.) This statement is supported by the record, which reflects this letter was sent on September 27, 2017, and the TPSA was dated September 26, 2017. (*Id.* at 147b-51b.) Further, Employer's counsel acknowledged that the WCJ in the 2017 proceedings "doesn't even discuss" the lump sum being asserted. (*Id.* at 168b.) While Claimant's counsel appears to have agreed, after the fact, that the figures were correct, the Penalty Petition appears to challenge the import of those figures. Further, Claimant's appeal to the Board asserted that Claimant was not obligated to immediately reimburse Employer and that it was error to award a full suspension of her benefits until the lien was reimbursed. (*Id.* at 191b-94b.) In support of that appeal, Claimant argued that *Protz* limited Employer's recovery only to the payment of future benefits and, therefore, Employer violated the WC Act by unilaterally suspending benefits, including the payment of her pro rata share of litigation payments, based on her non-payment of a lien that she did not owe. (*Id.* at 367b, 371b-73b.) Claimant later filed another brief with the Board, asserting that *Whitmoyer* precluded the inclusion of medical benefits in the accrued lien approved

22

by the WCJ and Employer being able to take a credit for those benefits into the future. (*Id.* at 386b, 403b-04b.)

Claimant's Penalty Petition and current arguments involve issues that are separate from whether the 2017 WCJ Decision properly granted subrogation. Given that Employer did not advise Claimant of the amounts at issue or that it would be seeking automatic reimbursement of more than $265,000 until after Claimant appealed the 2017 WCJ Decision, Claimant could not have raised these arguments during those proceedings. She most certainly could not have challenged Employer's subsequent suspension of her benefits based on the 2017 WCJ Decision or requested the imposition of a penalty based on that action. What is apparent from the record is that Claimant has raised *Protz* from the beginning of this litigation in support of her Penalty Petition and in opposition to Employer's Modification and Suspension Petition. Because this matter began before the Supreme Court issued its decision in *Whitmoyer* and Claimant's arguments implicated the scope of Employer's subrogation rights, we agree with Claimant that she raised *Whitmoyer* at the first opportunity to do so. Under *Thompson*, she is not precluded from relying on *Whitmoyer* to argue Employer's claimed subrogation amounts include benefits that are not subject to subrogation. For these reasons, Claimant did not waive her current arguments due to her failure to preserve them below.

> b. Whether Employer has the right to recover any medical benefits it has paid or will pay on Claimant's behalf through subrogation, and whether Claimant has an obligation to make any lump sum payment to reimburse Employer.

We have two main questions before us. First, whether Employer may recover the payments Employer made for Claimant's medical expenses prior to the 2017 WCJ Decision, and/or will make after that decision. Second, whether Claimant has

23

an immediate obligation to reimburse Employer for any of the payments Employer made prior to the 2017 WCJ Decision. We begin with Employer's contention that it can recover from Claimant the medical benefits it paid both after the date of Claimant's third-party recovery and that it will make after the 2017 WCJ Decision.

The parties do not dispute, nor could they reasonably do so following *Protz*, that Section 508(c) of the MCARE Act precludes an employer from recovering, pursuant to Section 319 of the WC Act, the indemnity and medical "benefits paid up until the time of trial." *Protz*, 131 A.3d at 578. *Protz* stands for the proposition that an employer's right to subrogation begins immediately **after** the date of third-party recovery. While the Pennsylvania Association For Justice argues that Section 508 of the MCARE Act precludes an employer from asserting any subrogation claim, this argument is contrary to our holding in *Protz*. There is no indication that *Protz* involved, as here, an employer seeking a lump sum repayment of the benefits it had paid between the time of the settlement of the third-party action and the resolution of the modification petition, perhaps because there the employer filed its review petition one month after the settlement. The WCJ in *Protz* ordered the recovery of the employer's subrogation interest only through the use of the **grace period** entitling the employer to reduce the claimant's "medical bills and disability benefits at the rate of 47% of the repriced amount for future medical bills and 47% of her weekly disability rate," *id.* at 576, and did not order, as Employer seeks here, the claimant to pay a lump sum followed by the use of a grace period. As such, *Protz* does not directly resolve the question of how to treat payments made where there has been a lengthy **delay** between the resolution of the third-party action and the grant of a modification petition.

*Whitmoyer* addressed the treatment of "future benefits" for subrogation purposes under Section 319 of the WC Act, but it did not involve a third-party settlement under the MCARE Act. Therefore, in *Whitmoyer*, the employer was not precluded from recovering all of the benefits it had paid prior to the date of the third-party recovery, both wage loss and medical, as an accrued subrogation lien, and the focus was on how the balance of recovery would be credited against the payment of the claimant's future benefits. Accordingly, *Whitmoyer*, too, does not exactly answer, at least completely, the questions presently before the Court.

Claimant appears to view the payments of indemnity and medical benefits made on her behalf between April 2013, the date of her third-party recovery, and the 2017 WCJ Decision as past, not future, payments of medical expenses and lost earnings that are not subrogable under Section 508 of the MCARE Act and *Protz*. She contends that Employer is entitled to recover its subrogation interest through a grace period beginning as of the 2017 WCJ Decision, during which time Employer can take a credit against her balance of recovery, as limited by *Whitmoyer*, but is obligated to continue to pay Claimant its pro rata share of the third-party litigation costs. In contrast, Employer appears to view, for the purposes of Claimant's appeal, the payments between April 2013 and the 2017 WCJ Decision as "future" payments that can be subrogated under Section 508 of the MCARE Act and *Protz*, thereby allowing it to obtain immediate reimbursement of those amounts which include both medical and indemnity benefits. Conversely, Employer appears to view these payments, for the purposes of its own appeal, as not being "future" payments subject to *Whitmoyer*'s limitation on an employer's ability to subrogate future medical benefits.

The Board concluded neither parties' approach was consistent with the relevant legal principles, and, therefore, issued an order that recognized the benefits paid by Employer after the date of Claimant's third-party recovery in April 2013 as "future" benefits which Employer was entitled to recover under *Protz*, but that, as such benefits qualified as "future" benefits, the recovery of those benefits was limited by *Whitmoyer* and did not include medical benefits. Upon review, the Board's approach is consistent with, and gives effect to, the relevant statutory provisions, *Whitmoyer*, and *Protz*.

Employer argues *Whitmoyer* is inapplicable for several reasons. It maintains *Whitmoyer* did not involve the first sentence of Section 319, which Employer asserts is the basis of its right to reimbursement of the medical benefits, and, therefore, *Whitmoyer*'s limitation on an employer's ability to recover its subrogation against medical benefits is inapplicable. Employer also asserts that *Whitmoyer* is distinguishable because it did not involve a third-party settlement under the MCARE Act, and, under the MCARE Act, Claimant **could** seek damages related to her future wage loss and medical expenses, which Employer should be permitted to subrogate. Limiting its subrogation rights to Claimant's indemnity benefits based on *Whitmoyer*, Employer contends, is not consistent with the purposes of subrogation, which are, among others, to prevent claimants from receiving a double recovery and to prevent employers from having to pay for the negligent actions of others.

Employer's first argument is premised on its contention that its reimbursement is governed by the first sentence of Section 319, but that argument is not consistent with the Supreme Court's interpretation. Section 319 provides, in pertinent part:

> Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the

26

right of the employe, his personal representative, his estate or his dependents, against such third party to the extent of the compensation payable under this article by the employer; reasonable attorney's fees and other proper disbursements incurred in obtaining a recovery or in effecting a compromise settlement shall be prorated between the employer and employe, his personal representative, his estate or his dependents. The employer shall pay that proportion of the attorney's fees and other proper disbursements that the amount of compensation paid or payable at the time of recovery or settlement bears to the total recovery or settlement. Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe, his personal representative, his estate or his dependents, and shall be treated as an advance payment by the employer on account of any future instalments of compensation.

77 P.S. § 671. The Supreme Court, in *Whitmoyer*, explained that Section 319

addresses two distinct scenarios. *See Rollins Outdoor Advert[.] v. W[orkers] C[omp.] A[ppeal] B[d.]*, . . . 487 A.2d 794, 796 ([Pa.] 1985). **First**, "the compensation paid by the employer **to the date of the third-party recovery** constitutes a claim against the recovery, payable immediately upon recovery to the employer." *Id.* As to this scenario, the General Assembly chose to use the word "compensation" without modification by the term "instalments of." That is, an employer's subrogation right "at the time of recovery or settlement" encompasses all "compensation" "theretofore paid" or "payable" to date. 77 P.S. § 671. This is the amount understood to be the employer's accrued subrogation lien or "total lien." . . . .

The **second** scenario relates to the **distribution** of the net **settlement proceeds,** namely what is left of the recovery after the employer has been reimbursed for "compensation theretofore paid." *See id.*; *see also Rollins Outdoor Advert[.]*, 487 A.2d at 796. Regarding this "excess" amount, section 319 provides that it **shall be "paid forthwith" to the employee to be treated as an "advance payment by the employer" – not as to "compensation" but rather "on account of future instalments of compensation."** 77 P.S. § 671.

*Whitmoyer*, 186 A.3d at 954-55 (emphasis added).

The first scenario, under which Employer argues it may recover the medical benefits it paid between the date of Claimant's third-party recovery in 2013 and the

2017 WCJ decision, applies to compensation payments that were made **up "to the date of the third-party recovery**." *Id.* at 954 (emphasis added). Here, however, the first scenario is inapplicable because Employer was **precluded** from seeking reimbursement for the "**compensation** theretofore paid," up "to the date of the third-party recovery," *id.* (emphasis added), by Section 508(a) of the MCARE Act as that "compensation" constituted "past medical expenses or past lost earnings" that were "covered by a private . . . benefit or gratuity that the claimant ha[d] received prior to trial," 40 P.S. § 1303.508(a). Because under the MCARE Act, Claimant could not recover those amounts, there was no recovery Employer could subrogate. Instead, the entirety of Claimant's third-party recovery became, in essence, the "net settlement proceeds" that have to be treated as "an 'advance payment by . . . [E]mployer' – not as to 'compensation'" but rather "on account of future instalments of compensation." *Whitmoyer*, 186 A.3d at 955. As the phrase "future instalments of compensation" excludes medical benefits per *Whitmoyer*, the "advance payments" against which Employer can recover its subrogation rights are limited to Claimant's indemnity benefits, and "[E]mployer is not permitted to seek reimbursement for future medical expenses from . . . [Claimant's] . . . recovery." *Id.* at 958. Employer cannot change the nature of those payments as statutorily delineated by merely delaying the filing of its petition and thus delaying the decision awarding subrogation, which could incentivize delaying the assertion of subrogation rights in order to recover medical benefits and avoid *Whitmoyer*'s limitation.

Employer's second and third arguments are premised on its belief that the main purpose of subrogation, to prevent double recovery, is not being fulfilled if *Whitmoyer* is applied to prevent it from recouping the medical benefits it paid following the date of Claimant's third-party recovery and will pay into the future

through the lump sum payment and a credit against Claimant's future medical benefits. These arguments are well-taken. However, the Supreme Court specifically stated it would not be appropriate for the Court to consider the "purposes" of subrogation given its finding that the statutory language in Section 319 was plain and unambiguous. Because the Supreme Court has already rejected these arguments, we are bound by that interpretation. We recognize that, although the settlement here was a lump sum, as it was in *Whitmoyer*, "that does not neatly or necessarily breakdown by category of damages," 186 A.3d at 958, it is possible that the category of future medical expenses may have been included, in which case, Claimant would receive damages for future medical expenses and not have to pay those expenses. However, the claimant in *Whitmoyer*, although the settlement amount was significantly less than here, did not have to pay his ongoing medical expenses and employer there received only its accrued subrogation lien.

To summarize, *Protz* expressly allows, through Section 319 of the WC Act, for the recovery of payments that an employer makes on a claimant's behalf following the resolution of the claimant's third-party action. Benefits paid prior to the date of the third-party recovery are not subject to subrogation per Section 508(a) and (c) of the MCARE Act as they are not to be included in calculating the claimant's damages. *Protz*. Here, because more than four years elapsed between the date of Claimant's third-party recovery and approval of Employer's request for subrogation, Employer paid four years' worth of benefits that are considered "future" benefits (occurring after the third-party settlement). Because they were paid after the third-party settlement, they are "future" benefits subject to subrogation. The date subrogation is approved is not the relevant date in this inquiry; it is the date of a claimant's third-party recovery that is determinative. 77 P.S. § 671; *Whitmoyer*, 186

29

A.3d at 955; *Protz*, 131 A.3d at 578. Both *Protz* and *Whitmoyer* involved an employer's recovery of "future" payments of compensation from a claimant's settlement of a third-party action. Accordingly, *Protz* and *Whitmoyer* relate to the same topic and should be considered together, as the Board did here. While *Protz* did not preclude recovery against both medical and indemnity benefits paid after the third-party settlement, *Protz* was effectively modified by the Supreme Court's subsequent decision in *Whitmoyer*.

Under *Whitmoyer*, an employer's subrogation rights to a credit against a claimant's "future instalments of compensation" are limited to recouping indemnity benefits and precludes the employer from recouping the medical benefits it pays on the claimant's behalf because "an employer is not permitted to seek reimbursement for future medical expenses from the [claimant's] balance of recovery." *Whitmoyer*, 186 A.3d at 958. This is what the Board concluded and so modified the WCJ's award to preclude Employer's recovery of any of the medical benefits it had paid since the third-party settlement or will pay into the future.

We now turn to Claimant's challenge to the directive that she make a lump sum payment to Employer to reimburse it for the amounts it paid in indemnity benefits between the date of her third-party recovery in 2013 and the 2017 WCJ Decision. We find no error or abuse of discretion in the Board's Order requiring Claimant to reimburse Employer for those amounts. Employer was entitled under *Protz* and *Whitmoyer* to assert its subrogation rights against the indemnity benefits it paid after the date of her third-party recovery because, at that point, Section 508's prohibition was no longer in effect. Under these circumstances, the entirety of Claimant's third-party recovery, per *Whitmoyer*, constituted an "advance payment" of her "future instalments of compensation," 77 P.S. § 671, which commenced as of

30

the date of the third-party settlement per *Protz*. In addition to this advance payment, Employer directly paid Claimant her normal indemnity benefits during that period. Thus, Claimant received a **double payment of indemnity benefits** during that time period. Recoupment of an overpayment of benefits directly from a claimant is available to prevent unjust enrichment or a double recovery. *Commonwealth v. Workers' Comp. Appeal Bd. (Noll)*, 80 A.3d 525, 530 (Pa. Cmwlth. 2013). This is what the $118,380.97 lump sum the Board directed to be paid represents. As for the suspension of the payment of Claimant's benefits and pro rata share, "[w]here the claimant cannot or will not reimburse the employer for compensation previously paid, the court has utilized a[] . . . formula, under which the entire net recovery (total recovery less costs) is applied to future credit weeks." *Emanuel v. Workmen's Comp. Appeal Bd. (Coco Bros., Inc.)*, 692 A.2d 1182, 1186 (Pa. Cmwlth. 1997); *see also Monessen, Inc. v. Workers' Comp. Appeal Bd. (Fleming)*, 875 A.2d 415, 419 (Pa. Cmwlth. 2005) (holding "where there is no cash from the third[-]party settlement to [make] a lump sum payment, a WCJ may grant a grace period at the full compensation rate"); *Wheeling-Pittsburgh Steel Co.*, 587 A.2d at 854-55 (authorizing suspension of a claimant's benefits where the claimant will not reimburse the employer). Thus, the WCJ was authorized to suspend Claimant's benefits in their entirety under *Monessen* and *Emanuel* until the full reimbursement has been made.

The Board's resolution, which allows Employer to recover from Claimant's third-party award of $2.088 million, which is deemed an advance payment of her indemnity benefits, a lump sum calculated using only the indemnity benefits it directly paid to Claimant from April 2013, the point when Employer's entitlement to subrogation began, until the 2017 WCJ Decision, gives effect to Section 508 of

31

the MCARE Act and *Protz*, while also giving effect to Section 319 of the WC Act and *Whitmoyer*. Employer obtains reimbursement for the "future" indemnity benefits it directly paid Claimant following the 2013 third-party settlement, either through Claimant making a lump sum payment or, should she refuse to pay that lump sum, through the suspension of all of Claimant's benefits including her pro rata share, the amount of which the parties do not challenge, until that amount is reimbursed in full.[12] Once there is full reimbursement, Employer is able to take a credit against Claimant's ongoing indemnity benefits, minus the pro rata share, until Claimant's third-party recovery is exhausted.

### B. Penalty Petition

Claimant argues that Employer's unilateral suspension of her benefits was "a gross violation" of the WC Act and the fact that it may have been entitled to a lump sum payment of its accrued subrogation lien did not authorize the suspension of her benefits. (Claimant's Br. at 11, 23.) Employer's actions are particularly "disingenuous," Claimant asserts, because Employer was only entitled to subrogate future benefits under the MCARE Act and the grace period does not begin to run until the date Employer's relief was granted. (*Id.* at 24.) Claimant further asserts that Employer agreed, in a June 1, 2015 letter, that it was not entitled to reimbursement of its net lien and now claims that it is entitled to that reimbursement. (*Id.* at 25.) Therefore, according to Claimant, the WCJ properly granted the Penalty Petition but erred in failing to award a penalty.

---

[12] We note that, due to the suspension of Employer's obligation to pay Claimant the pro rata share and the ongoing credit Employer is taking against what it would have had to pay Claimant in indemnity benefits, the amount outstanding has reduced and will continue to reduce with each week of Employer's non-payment.

Employer responds that the Board incorrectly concluded that it unilaterally suspended Claimant's benefits in violation of the WC Act because it was acting pursuant to the 2017 WCJ Decision. However, even if that conclusion was correct, Employer argues the decision not to impose penalties is supported by precedent and should be affirmed. Employer disagrees that its June 1, 2015 letter reflected that it was not entitled to reimbursement of its net lien. (Employer's Br. at 45.) Rather, that letter reflects that it was not entitled to reimbursement of $194,965.78, which was based on Claimant's receipt of past collateral benefits (paid until trial), but would be seeking to assert a subrogation lien against the post-adjudication benefits it had paid to Claimant after April 8, 2013. (*Id.* at 45-46 (quoting S.R.R. at 440b-41b).)

Section 435(d) of the WC Act, 77 P.S. § 991(d),[13] authorizes the imposition of penalties for violations of the WC Act, the rules, or regulations, and such penalties may range from 10% to 50% for unreasonable or excessive delays. Claimants bear the burden of proving a violation of the WC Act. "[E]ven where a violation . . . is apparent on the record," penalties "are not automatic, but are left to the discretion of the WCJ." *P & R Welding & Fabrication v. Workmen's Comp. Appeal Bd. (Pergola)*, 664 A.2d 657, 663 (Pa. Cmwlth. 1995). "The assessment of penalties as well as the amount of the penalties imposed is discretionary," and "[a]bsent an abuse of discretion by the WCJ, this Court will not overturn a WCJ's assessment of penalties." *Jordan v. Workers' Comp. Appeal Bd. (Phila. Newspapers, Inc.)*, 921 A.2d 27, 41 (Pa. Cmwlth. 2007). "An abuse of discretion is not merely an error of judgment but occurs, . . . , when the law is misapplied in reaching a conclusion."

---

[13] Added by Section 3 of the Act of February 8, 1972, P.L. 25.

*Westinghouse Elec. Corp. v. Workers' Comp. Appeal Bd. (Weaver)*, 823 A.2d 209, 213-14 (Pa. Cmwlth. 2003).

Because there was no error in suspending Claimant's benefits until she repays Employer as set forth above, the WCJ did not abuse his discretion in declining to impose penalties despite finding a violation of the WC Act. A unilateral change by an employer does not always warrant the imposition of a penalty. In *DeVore*, this Court affirmed the decision not to award a penalty despite the employer unilaterally reducing its payments to the claimant based on its belief that it was statutorily entitled to subrogate the claimant's third-party recovery. 645 A.2d at 918, 920. Upon consideration of the claimant's penalty petition and the employer's modification petition, the referee, as WCJs were then called, granted the modification of the claimant's benefits to reflect the employer's subrogation rights and denied the claimant's request for penalties. *Id.* at 918. Although we recognized that the unilateral action was a violation of the WC Act, we found "no legal reason to reverse" the referee's decision not to impose penalties because the WCJ ultimately ordered the reduction of the claimant's benefits. *Id.* at 920.

Here, even assuming that Employer unilaterally suspended Claimant's benefits as of October 3, 2017, to recover its accrued lien in violation of the WC Act, the WCJ ultimately suspended Claimant's benefits for that reason in the 2018 WCJ Decision. The WCJ recognized the violation of the WC Act, but, acting within his discretion, decided that this was a technical violation that did not warrant the imposition of a penalty particularly where "Claimant ha[d] retained a substantial windfall in failing to reimburse the accrued lien payable from the third-party settlement." (2018 WCJ Decision, COL ¶ 6.) Substantial discretion is afforded to WCJs in making these determinations, and, as in *DeVore*, we find "no legal reason

34

to reverse" the WCJ's decision not to award penalties under these circumstances. 645 A.2d at 920.

## III. Conclusion

For the foregoing reasons, the Board did not err in affirming the WCJ's grant of the Penalty Petition without awarding penalties or in affirming, as modified, the grant of the Modification and Suspension Petition. Accordingly, we affirm.

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Anna Griffis,                                      :
                      Petitioner                   :
                                                   :
            v.                                     :   No. 273 C.D. 2019
                                                   :
Workers' Compensation Appeal                       :
Board (Albert Einstein Healthcare                  :
Network),                                          :
                      Respondent                   :


Albert Einstein Medical Center,                    :
                      Petitioner                   :
                                                   :
            v.                                     :   No. 280 C.D. 2019
                                                   :
Workers' Compensation Appeal                       :
Board (Griffis),                                   :
                      Respondent                   :

# **O R D E R**


**NOW**, July 15, 2020, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matters, is **AFFIRMED**.


---

**RENÉE COHN JUBELIRER,** Judge